**EXHIBIT  1**

10



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE** 9/8/20 | **PAGE NUMBER** 1 of 20 | **NUMBER** DOC 450.100 |
| **POLICY** | TITLE **MAIL FOR INDIVIDUALS IN PRISON** | | |

**REVIEW/REVISION HISTORY:**

| | | | |
|---|---|---|---|
| Effective: | 2/1/83 DOC 450.020 | Revised: | 6/7/07 AB 07-016 |
| Revised: | 9/1/83 | Revised: | 7/30/07 AB 07-022 |
| Revised: | 10/24/83 | Revised: | 9/12/07 AB 07-028 |
| Revised: | 2/20/84 | Revised: | 5/19/08 |
| Revised: | 11/6/87 | Revised: | 8/11/08 AB 08-022 |
| Revised: | 1/1/92 DOC 450.100 | Revised: | 10/1/09 |
| Revised: | 11/1/92 | Revised: | 12/31/09 |
| Revised: | 11/1/93 | Revised: | 9/1/10 |
| Revised: | 12/27/93 | Revised: | 7/25/11 |
| Revised: | 11/1/94 | Revised: | 8/15/14 |
| Revised: | 1/10/99 | Revised: | 7/1/15 |
| Revised: | 1/5/00 | Revised: | 11/21/15 |
| Revised: | 5/1/04 | Revised: | 12/27/17 |
| Revised: | 1/22/07 | Revised: | 1/20/20 |
| Revised: | 4/26/07 AB 07-013 | Revised: | 9/8/20 |

**SUMMARY OF REVISION/REVIEW:**

Added IV.I. that an Indian Tribal Entity may send paper ballots to members for governmental matters

VIII.A.1.a. - Added Just Detention International as a legal mail entity

**APPROVED:**

Signature on file

_____        8/26/20
**STEPHEN SINCLAIR**, Secretary              _____
Department of Corrections                    Date Signed

Exhibit 1



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>9/8/20 | PAGE NUMBER<br>2 of 20 | NUMBER<br>**DOC 450.100** |
| **POLICY** | TITLE<br>**MAIL FOR INDIVIDUALS IN PRISON** | | |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; RCW 72.02.260; RCW 72.09.450; WAC 137-36; WAC 137-48; DOC 200.000 Trust Accounts; DOC 320.255 Restrictive Housing; DOC 320.260 Secured Housing Units; DOC 420.375 Contraband and Evidence Handling (RESTRICTED); DOC 440.000 Personal Property for Offenders; DOC 450.120 Packages for Offenders; DOC 450.050 Prohibited Contact; DOC 450.300 Visits for Incarcerated Individuals; DOC 460.000 Disciplinary Process for Prisons; DOC 500.100 Correspondence Education for Offenders; DOC 590.500 Legal Access for Incarcerated Individuals; USPS Domestic Mail Manual

**POLICY:**

I.    The Department has established procedures to maintain safety and security governing mail to/from incarcerated individuals.

II.   Allowances and limits outlined in this policy may be restricted per DOC 320.255 Restrictive Housing and DOC 320.260 Secured Housing Units.

III.  It is a federal offense to attempt to or use the United States Postal Service (USPS) or private/commercial carrier to introduce contraband or illegal drugs into a correctional facility.

**DIRECTIVE:**

I.    General Requirements

A.   Correspondence between incarcerated individuals and their correspondents will be limited to the USPS, United Parcel Service (UPS), FedEx, and the contracted eMessage service provider.

B.   Individuals will be responsible for informing their correspondents of the rules governing mail for incarcerated individuals.

C.   Limits may be placed on volume, length, content, or source of mail when necessary to maintain safety and security.

D.   Writing privileges to a person or group may be withdrawn when:

1.   Requested by the recipient in writing,

2.   The recipient is a minor and the minor's parent or guardian has submitted a written request that the privilege be terminated,

3.   Court ordered, or

12



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 9/8/20 | PAGE NUMBER 3 of 20 | NUMBER **DOC 450.100** |
| **POLICY** | TITLE **MAIL FOR INDIVIDUALS IN PRISON** | | |

        4.     Specific cause exists as supported by criteria in this policy.

E.    Excluding weekends, holidays, or emergency situations, approved mail will be processed in the following timeframes:

    1.    Outgoing first class mail will not be held for more than 48 hours. Mail requiring translation will not be held for more than 5 business days.

    2.    Incoming first class mail will be distributed to the individual within 2 business days. All other incoming mail and mail requiring translation or a rejection notice will be distributed to the individual within 5 business days.

    3.    Electronic messages (i.e., eMessages) will be distributed to the individual within 7 business days.

F.    Incarcerated individuals will not process and/or distribute another incarcerated individual's mail.

G.    Packages will be processed per 450.120 Packages for Offenders.

II.    Envelopes and Postage

A.    Incarcerated individuals will use pre-franked envelopes purchased from the facility commissary or Correctional Industries. Individuals may not possess more than 40 pre-franked envelopes without advance written approval from a designated unit employee.

    1.    Individuals will order enough pre-franked envelopes to meet their projected first class postage needs through the next ordering cycle.

    2.    Upon receipt, individuals will write their full committed name and DOC number on the front of the envelope, in the top left corner. Envelopes found in an individual's possession that are unmarked, altered, or marked as belonging to another individual will be confiscated as contraband.

    3.    Any attempts to use pre-franked envelopes as currency will result in the envelopes being confiscated as contraband.

B.    Incoming mail may include pre-paid envelopes if they are received from vendors or public agencies for the purpose of direct return mail.

    1.    Direct return mail envelopes with altered addresses will be treated as contraband.

C.    Non-indigent individuals will complete DOC 02-003 Postage Transfer to cover:



| | | |
|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY** **PRISON** OFFENDER/SPANISH MANUALS | |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 9/8/20 | 4 of 20 | **DOC 450.100** |

**POLICY**

| TITLE | |
|---|---|
| | **MAIL FOR INDIVIDUALS IN PRISON** |

    1.    Postage for authorized greeting cards and oversized envelopes,

    2.    Fees for certified receipt and other special services, and

    3.    Shipping costs of packages, including shipping insurance up to $300. Exceptions for shipping insurance requires the Superintendent's written approval.

D.    Except greeting cards and envelopes purchased through an approved vendor, postage transfers submitted with envelopes that do not have pre-franked/pre-paid postage will not be mailed.

E.    To use the JPay eMessaging system, eStamps will be purchased through the secured JPay kiosk.

F.    Except for USPS specialized services, postage debt can be incurred for outgoing legal mail.

G.    Indigent individuals may receive 10 first class pre-franked envelopes per month.

    1.    Indigent postage will not include USPS specialized services or eMessaging through the JPay system.

    2.    Additional postage may be allowed, with Superintendent/designee approval, if the first class pre-franked envelope postage amount is exceeded.

    3.    Indigent individuals may request additional postage from the Law Librarian or case manager to send legal mail to:

        a.    A court or opposing attorney/party, only in cases related to the individual's terms of confinement or conditions of sentencing,

        b.    The Washington State Department of Enterprise Services Office of Risk Management,

        c.    The Washington State Bar Association,

        d.    The Indeterminate Sentence Review Board (Board), and/or

        e.    The Headquarters Prison Rape Elimination Act (PREA) Coordinator.

    4.    Indigent individuals may request additional postage from the Law Librarian or case manager to send mail to the Office of the Corrections Ombuds.

H.    Mail arriving at the facility with postage due may be delivered to the individual at the Superintendent's discretion.

14



| | |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 9/8/20 | 5 of 20 | **DOC 450.100** |

**POLICY**

TITLE **MAIL FOR INDIVIDUALS IN PRISON**

    1.    The facility will pay the postage due or hold the mail for up to 30 days to allow the individual to make payment.  If payment is not made within 30 days, the mail/package will be donated to charity or discarded.

    2.    Reimbursement for postage and all expenditures made by the facility for postage will be processed as a withdrawal/debt per DOC 200.000 Trust Accounts.

III.    Inspection

    A.    Superintendents will designate employees to inspect and read mail to prevent:

        1.    Sending/receiving contraband or other material that threatens facility order or security, and/or
        2.    Criminal activity.

    B.    Mail will be rejected based on legitimate penological interests and per Unauthorized Mail (Attachment 1).

    C.    Contraband or illegal items/drugs uncovered during inspections will be handled per DOC 420.375 Contraband and Evidence Handling (RESTRICTED).  The Mailroom Supervisor will ensure:

        1.    The rejection process is initiated,
        2.    Photocopies of the original documents are placed in evidence, and
        3.    The disciplinary process is initiated per DOC 460.000 Disciplinary Process for Prisons, as appropriate, and any sanction(s) imposed are enforced.

    D.    Opinions critical of Department policy or personnel will not be censored.

    E.    Cashier's checks and money orders must include the individual's name and DOC number, and will be sent to the facility Business Office for deposit per DOC 200.000 Trust Accounts.

IV.    Incoming Mail

    A.    Incoming mail must include:

        1.    The incarcerated individual's full committed name and DOC number.  An Also-Known-As (i.e., AKA) name may be included below the committed name.  Mail that does not include the individual's full committed name and/or DOC number and received from the:

            a.    Health Care Authority, the Washington Health Benefits Exchange, or a state approved managed care plan will be held and the



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON**<br>OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 9/8/20 | 6 of 20 | **DOC 450.100** |

| **POLICY** | TITLE |
|---|---|
| | **MAIL FOR INDIVIDUALS IN PRISON** |

        Headquarters Medical Disbursement Unit will be contacted for information/direction.

    b.    Veteran's Administration will be forwarded to the Reentry Division at Headquarters.

    2.    A return address per USPS Domestic Mail Manual, including an identifiable last name.

        a.    Mail with no return address will be rejected and any money included with the mail will be deposited in the Betterment Fund.

B.    Mail with an incomplete address will not be opened and will be returned to the sender. A rejection notice is not required.

C.    Audio/video recordings or devices must comply with DOC 440.000 Personal Property for Offenders and DOC 590.500 Legal Access for Incarcerated Individuals.

D.    Address labels for incoming mail are allowed unless the facility can document an ongoing security concern.

E.    Mailroom employees will remove identifying documentation (e.g., social security cards, marriage/birth/death certificates) and forward them to designated employees for processing/retention. The individual will receive a receipt for the removed item(s) and a notice of its disposition per facility procedures.

F.    Portions of the envelope (e.g., stamps, flaps) or the entire envelope may be removed/retained if necessary for safety and security reasons and will not require a mail rejection notice.

G.    Individuals may receive photographs if they meet the following criteria:

    1.    The DOC number must be marked on the back center of each photograph or at the bottom of the page, either written in ink by the individual or stamped by the mailroom.

        a.    Photographs found with no DOC number will be handled per DOC 420.375 Contraband and Evidence Handling (RESTRICTED).

    2.    Photographs are limited to one of the following in one mailing. Excess photographs/pages will be rejected.

        a.    Up to 10 individual photographs,

16



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON**<br>OFFENDER/SPANISH MANUALS |

| | REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|---|
| | 9/8/20 | 7 of 20 | **DOC 450.100** |

| | TITLE |
|---|---|
| **POLICY** | **MAIL FOR INDIVIDUALS IN PRISON** |

        1)     Each photograph must be no less than 2 inches by 3 inches.

    b.     Up to 20 bound pages with multiple photographs sent directly from a vendor (e.g., Shutterfly, Snapfish), or

    c.     Up to 10 photographs on a single sheet of paper.

        1)     Paper may be double-sided, but is limited to 10 total photos.

H.    Batch/bulk mailings will be authorized when the items meet penological objectives and each item in the packet is individually labeled with the individual's name, DOC number, and cell/room assignment.

    1.    Individual labeling may be waived for religious and non-profit organizations that send bulk mail pamphlets to individuals.

    2.    Batch/bulk mailings will be accepted or rejected in whole as one mailing.

I.    Tribal governments and Alaska Native villages (i.e., Indian Tribal Entity) may send paper ballots to incarcerated enrolled members for their governmental matters (e.g., elections).

    1.    By receiving a ballot from an Indian Tribal Entity, an individual will be considered eligible to vote for the governmental matter.

    2.    The Department will not be responsible for determining the validity of, tracking, or maintaining any ballot cast by an individual.

J.    For incoming certified/return receipt/signature confirmation mail, mailroom employees will:

    1.    Sign and date the receipt when requested by the delivering agent,
    2.    Inspect the mail,
    3.    Record the mail in the legal mail log,
    4.    Deliver the mail to the individual, and
    5.    Have the individual sign the log upon receipt.

V.    Outgoing Mail

    A.    Outgoing mail sent via the USPS must have a complete return address that includes the individual's full committed name, DOC number, and cell/room assignment, and the full name and address of the facility.  The return address may include any other legal name below the committed name.

    B.    Individuals are not permitted to mail out postcards.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 9/8/20 | PAGE NUMBER 8 of 20 | NUMBER **DOC 450.100** |
| **POLICY** | TITLE   **MAIL FOR INDIVIDUALS IN PRISON** | | |

C. Address labels for outgoing mail are not allowed, unless on a postage paid, pre-addressed envelope.

D. Envelopes will be stamped with the following or similar message: "This was mailed by an individual confined at a Washington State Department of Corrections facility. Its contents are uncensored."

E. Individuals will use DOC 21-473 Kite, the kiosk, or USPS to correspond with employees, contract staff, and volunteers.

F. Non-deliverable and/or returned items do not require a rejection notice and will be returned to the individual.

VI. Electronic Messages

A. Individuals must agree to the terms of service to use the JPay eMessaging system, which is only available through the JPay kiosk. Videograms (i.e., pre-recorded video attached to an eMessage) must be conducted consistent with facility visit guidelines per DOC 450.300 Visits for Incarcerated Individuals.

B. Individuals found to be using another individual's eMessaging account, conspiring/attempting to introduce contraband, or allowing another individual to use their account will be subject to disciplinary action and the immediate suspension of all involved eMessaging accounts.

VII. The Office of the Corrections Ombuds Mail

A. Mail to/from the Office of the Corrections Ombuds will be treated as privileged and confidential.

B. Employees will follow the Office of the Corrections Ombuds guidelines when processing mail to/from the Office of the Corrections Ombuds and incarcerated individuals.

1. Mail will arrive in a light green envelope.

2. Incoming mail will be opened in the individual's presence, inspected, and issued by designated employees.

a. The individual may request a copy of the envelope, but the employee will maintain the original for disposal.

3. Outgoing mail must:



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>9/8/20 | PAGE NUMBER<br>9 of 20 | NUMBER<br>**DOC 450.100** |
| **POLICY** | TITLE<br>**MAIL FOR INDIVIDUALS IN PRISON** | | |

a. Clearly show the correct address for the Office of the Corrections Ombuds.

b. Have a return address belonging to the sender.

c. Not be opened by employees.

4. Employees will not document (e.g., mail log) sending, receiving, or issuing mail to/from the Office of the Corrections Ombuds.

VIII. Legal Mail

A. Incarcerated individuals have the ability to correspond by means of legal mail. Legal mail must meet the following requirements and is subject to inspection to ensure the contents qualify as legal mail:

1. Legal mail must be correspondence to or from one of the following, as indicated in the mailing address or return address on the front of the envelope:

a. Any court or opposing attorney/party, the Washington State Bar Association, the Board, the Washington State Department of Enterprise Services Office of Risk Management, PREA auditors certified by the United States Department of Justice, the Headquarters PREA Coordinator, and/or Just Detention International.

b. PREA auditor leads certified by the United States Department of Justice when related to an audit in process at the individual's facility.

c. The President or Vice President of the United States, members of the United States Congress, embassies and consulates, the United States Department of Justice, Attorney General's Office, governors, members of the state legislature, and law enforcement officers in their official capacity.

d. The attorney of record (i.e., defense attorney) in court cases that have been filed in a local, state, or federal court.

e. An attorney corresponding with an individual concerning legal advice, including established groups of attorneys representing the individual (e.g., American Civil Liberties Union, Disability Rights

19



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON** OFFENDER/SPANISH MANUALS |

| | REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|---|
| | 9/8/20 | 10 of 20 | **DOC 450.100** |

| **POLICY** | TITLE |
|---|---|
| | **MAIL FOR INDIVIDUALS IN PRISON** |

Washington, legal service corporations, public defender associations).

2.  The front of the envelope must be clearly marked "Legal Mail", "Attorney/Client", "Confidential", or similar.

    a.  Incoming mail readily identifiable as being from a court will be handled as legal mail, regardless of whether it has been marked legal mail.

    b.  Documents sent from any Public Disclosure Unit are not considered legal mail.

B.  Legal mail may only contain paper documents that are legal in nature, and must comply with DOC 590.500 Legal Access for Incarcerated Individuals.  Legal mail does not include eMessages or their attachments and will not be processed as legal mail.

1.  Individuals with a current DOC 13-508 Accommodation Status Report may receive, possess, and send out cassette tapes as legal mail.

    a.  To receive a cassette tape, the legal entity sending it must notify the facility's Legal Liaison Officer, who will notify the mailroom.

        1)  If the legal entity does not notify the LLO before sending the cassette, it will be rejected by the mailroom.

        2)  Cassettes must meet the requirements in DOC 440.000 Personal Property for Offenders.

        3)  Cassettes will be processed as legal mail and visually inspected, but will not be listened to as a part of the inspection.

    b.  Individuals will contact the facility Americans with Disabilities Act (ADA) Coordinator to request to listen to or create a cassette.

    c.  Cassettes will be stored per 590.500 Legal Access for Incarcerated Individuals.

C.  Legal Mail Procedures

1.  Incoming legal mail will be opened in the individual's presence by designated employees.  Contents that do not meet the legal mail



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 9/8/20 | 11 of 20 | **DOC 450.100** |

**POLICY**

| TITLE | |
|---|---|
| | **MAIL FOR INDIVIDUALS IN PRISON** |

requirements per this policy and/or contain contraband or any material that would threaten facility order/security will be rejected.

    a.    Employees may confiscate/retain the envelope if necessary for safety and security reasons and will not require a mail rejection notice.  The individual may request a copy of the envelope.

    b.    Incoming legal mail may contain a postage paid, pre-addressed envelope for the individual to return documents/responses to the sender.

    c.    An employee who inadvertently opens a piece of legal mail will write the employee's initials and that it was unintentionally opened on the envelope.

    d.    If an individual refuses to sign and accept legal mail, including by callout, a mailroom employee will document the refusal in the legal mail log with the time, date, sender's name, and individual's name. The mail will be stamped "Refused by Incarcerated Individual - Return to Sender".

2.    Outgoing legal mail will be handled as follows:

    a.    The individual will present the documents and envelope to the designated employee, who will confirm that the documents are legal mail and there is no contraband.

    b.    The individual will place the documents in the envelope and seal it in the employee's presence, who will sign or initial over the sealed flap of the envelope and log out the mail in the individual's presence.

    c.    When practical, the employee will observe the individual place the envelope in a legal mail container/drop box, or the individual will observe the employee place the envelope in the container/box. Otherwise, the employee will secure the legal mail until delivered to the mailroom.

3.    If there is a question whether the mail qualifies as legal mail, it may be retained for no more than 24 hours, excluding weekends and holidays, to resolve the question.

D.    The use of state issued legal supplies for non-legal mail purposes is prohibited and will result in the mail being rejected.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON**<br>OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 9/8/20 | 12 of 20 | **DOC 450.100** |

| | TITLE |
|---|---|
| **POLICY** | **MAIL FOR INDIVIDUALS IN PRISON** |

IX.  Non-English Mail

    A.  Incoming and outgoing correspondence written in a language other than English, including correspondence written in more than one language, will be reviewed.

        1.  A translator will be used to translate eMessages on the JPay system.

        2.  Other non-English mail, including JPay videograms and languages not available through the translator on the JPay system, will be reviewed by an employee who is a Department-certified translator, when available.  If a Department-certified translator is unavailable, the mail will be sent to the contracted vendor for review using DOC 05-774 Foreign Language and Mail Review.

X.  Rejecting Mail

    A.  Mailroom employees will use DOC 05-525 Rejection Notice, or an equivalent automated notice through JPay for rejected eMessages, to notify individuals when mail is rejected.

        1.  If it is incoming mail, the notice will also be sent to the sender.

        2.  The notice will:

            a.  Be distributed to the individual within 5 business days of the facility receiving the mail and within 2 business days of the mail being rejected.

            b.  Include the name and address of the sender/recipient, and the reason for the rejection.

    B.  Rejected outgoing mail/eMessages are automatically reviewed by the Superintendent/designee and Headquarters Correctional Manager, if the rejection is upheld by the Superintendent/designee and does not require an appeal request.

    C.  Rejected incoming mail/eMessages can be appealed to the Superintendent/ designee by submitting a written request to the mailroom within:

        1.  10 days of the rejection if appealed by the individual.

        2.  20 days of the rejection if appealed by the sender.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON**<br>OFFENDER/SPANISH MANUALS |

| | REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|---|
| | 9/8/20 | 13 of 20 | **DOC 450.100** |

| **POLICY** | TITLE |
|---|---|
| | **MAIL FOR INDIVIDUALS IN PRISON** |

D.    If the rejection of incoming mail/eMessages is appealed, the Superintendent/ designee will review the appeal within 10 business days of receipt and either uphold the rejection or allow delivery.

　　1.    If the rejection is upheld, the Superintendent/designee will notify the individual/sender using the initial DOC 05-525 Rejection Notice, or an equivalent notice through JPay for eMessages.

　　　　a.    The decision may be appealed by submitting a written request to the mailroom within:

　　　　　　1)    10 days of the decision if appealed by the individual.
　　　　　　2)    20 days of the decision if appealed by the sender.

　　　　b.    The mailroom will document and forward the appeal to the Headquarters Correctional Manager for review and final decision.

　　　　　　1)    Appeals sent directly to the Headquarters Correctional Manager by the individual/sender will not be accepted and will be returned.

E.    The Headquarters Correctional Manager will review mail rejection notices and appeal requests, if filed, to uphold or reverse the action taken by the Superintendent/designee.  A copy of the DOC 05-525 Rejection Notice, or equivalent notice for eMessages, will be provided to the individual/sender with the decision.

　　1.    If the rejection is reversed, the mail will be sent to the addressee within 7 days of receipt of the Headquarters Correctional Manager's decision.

　　2.    If the rejection is upheld for outgoing mail, the facility will retain the mail in a separate file for 2 years, and then it will be destroyed.  Rejected mail will not be returned to the individual per RCW 72.02.260.

　　3.    Individuals will be responsible for arranging disposal for unauthorized incoming mail within 30 days of the final decision.

　　　　a.    If the individual does not make arrangements within 30 days, the mail will be destroyed.

　　　　　　1)    When the mail contains funds, the funds will be deposited into the Betterment Fund.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 9/8/20 | PAGE NUMBER 14 of 20 | NUMBER **DOC 450.100** |
| **POLICY** | TITLE **MAIL FOR INDIVIDUALS IN PRISON** | | |

  b. Exceptions may be made for incoming mail to be held for a lawsuit/tort claim if the individual submits a written request within the 30 days. An extension up to 90 days may be allowed for the individual to provide proof that a lawsuit/tort claim has been filed. Proof must be submitted to the Mailroom Sergeant, who will notify the facility Legal Liaison Officer of the pending lawsuit/tort claim.

   1) Once proof has been provided, the mail will be held until the lawsuit/tort claim has been resolved in the courts or by the Office of Enterprise Services, Tort Claims Division.

 F. Incoming and outgoing tax-related correspondence will be screened by mailroom employees and forwarded to the Internal Revenue Service (IRS) for review per instructions received by the IRS (i.e., Blue Bag Program).

  1. Mailroom employees will provide the individual written notice for the intercepted mail using DOC 05-525 Rejection Notice. Appeal responses will be subject to IRS timeframes and outcome responses will be provided per IRS directions to the individual.

  2. Reviewed mail returned to the facility by the IRS will be distributed to the individual.

XI. Publications

 A. Books, magazines, newspapers, catalogs, and brochures will only be treated as publications if they contain a publishing company/author, publication date, volume/issue number or other identifier, copyright notice/date, and publisher address. All other catalogs/brochures will be considered general incoming mail.

 B. Individuals may receive publications as follows:

  1. Individuals may receive new books, newspapers, certain catalogs and brochures, and other publications in any language sent directly from the publisher(s) and/or approved vendor(s).

  2. Individuals may receive used books in any language from non-profit organizations approved by the Correctional Program Administrator. A list of approved non-profit organizations will be available on the Department's website. Used publications from any other source are not authorized, with the following exceptions:

   a. When accepted by the Washington State Library (WSL).



| | |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY** **PRISON** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 9/8/20 | 15 of 20 | **DOC 450.100** |

| | |
|---|---|
| **POLICY** | **TITLE** **MAIL FOR INDIVIDUALS IN PRISON** |

      b.    Books from the Monroe City Library for use in the Special Offender Unit/Intensive Management Unit at the Monroe Correctional Complex, and

      c.    Publications approved per DOC 500.100 Correspondence Education for Offenders.

   3.    Publications must be delivered to the facility by USPS, UPS, or FedEx and are not considered first class mail per USPS Domestic Mail Manual.  Front door courier delivery (e.g., newspapers) is not allowed.

   4.    Only newspaper publications will be allowed for individuals housed in Reception Diagnostic Centers.

C.    Publications in languages other than English must be reviewed by the Headquarters Correctional Manager.

   1.    Publications written in Braille, except those received by facility libraries, will be limited to individuals with a documented vision disability.

D.    Books will be marked, either written in ink by the individual or stamped by the mailroom, with the individual's DOC number in the center of the inside front cover or along an unbound edge.

E.    Items attached to a perforated page (e.g., product samples, CDs, DVDs) will be removed if doing so will not alter the publication.  Loose advertisement cards may be removed as resources allow.

   1.    If the item cannot be removed without altering the publication (e.g., tearing a page from the publication), or if the item potentially has value (e.g., CDs included with books), the entire publication will be rejected.

      a.    DOC 05-525 Rejection Notice will be provided to the individual if an audio/video recording is removed.  Individuals will be allowed to mail the audio/video recording out at their own expense.

   2.    Removal of loose advertisement cards and product samples does not require a rejection notice.

F.    No publications will be withheld solely on the basis of their appeal to a particular ethnic, racial, religious, or political group, or sexual orientation.

G.    Individuals may not receive subscriptions and/or publications from another individual or the friends or family of another unrelated individual.



| | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | REVISION DATE | PAGE NUMBER | NUMBER |
| | 9/8/20 | 16 of 20 | **DOC 450.100** |
| **POLICY** | TITLE | | |
| | **MAIL FOR INDIVIDUALS IN PRISON** | | |

H.   Publications with content that violates any Department policy or facility specific procedure will be referred to the Publication Review Committee for further review and a final decision.

   1.   The Publication Review committee will meet at least monthly.

   2.   Publications requiring more information may take an additional 2 weeks to review.

   3.   The receiving mailroom will:

      a.   Scan the questionable page(s) from the publication and a completed DOC 05-525 Rejection Notice to the shared folder at Headquarters.

         1)   A new rejection notice will be completed and distributed for subsequent publications received with the same title, copyright date, and volume/issue number.

      b.   Provide the individual and vendor/publisher with a copy of DOC 05-525 Rejection Notice.

      c.   Notify Prison mailrooms and Washington State Library contract staff that the publication is being held for review by the committee.

   4.   The committee will review the facility's decision and return the completed DOC 05-525 Rejection Notice to the facility.

      a.   The individual and vendor/publisher will be notified of the committee's decision.  Notification should be made within 10 business days.

      b.   The committee's decision will apply to subsequent publications that were held by any facility.  Each facility will notify the individual of the committee's decision, including the date, on the original DOC 05-525 Rejection Notice.  Subsequent notices will not contain a signature from the chair of the committee.

      c.   Publications initially rejected as sexually explicit material per WAC 137-48-020 may be approved by the committee for artistic, health/medical, and educational purposes.

   5.   The individual or Mailroom Sergeant may appeal the committee's decision within 10 business days by submitting DOC 21-757 Publication Rejection



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE** 9/8/20 | **PAGE NUMBER** 17 of 20 | **NUMBER** DOC 450.100 |
| **POLICY** | **TITLE** **MAIL FOR INDIVIDUALS IN PRISON** | | |

        Appeal.  The vendor/publisher may appeal the committee's decision to the Mailroom Sergeant within 20 business days.

        a.    A mailroom employee will forward the appeal request to the Headquarters Correctional Manager, who will provide a final decision to the requester.

    6.    The final decision will be binding for at least 3 years and will be maintained in a database by the Assistant Secretary for Prisons/designee.

XII.    Forwarding Mail

    A.    Individuals will be responsible for informing their correspondents, including publishers, of a change of address.

    B.    Facilities will forward first class mail, consistent with the USPS Domestic Mail Manual, for a period of 90 days if the individual provides a forwarding address.

        1.    Legal mail will be forwarded daily and all other mail at least weekly. Mailroom employees will log the items forwarded and the addresses to which they were sent.

        2.    Mail for individuals out to court will be forwarded to the jail where they are being held.

        3.    Legal mail for individuals transferred to a community health care facility will be delivered if they are able to personally accept it.  Otherwise, it will be returned to sender marked "Incarcerated Individual Unable to Accept Mail".

        a.    All other mail for individuals transferred to a community health care facility will be held in the Prison mailroom until they return.

        4.    If first class mail is unopened, the new address will be noted on the envelope and returned to the USPS for forwarding.  State funds will not be used to forward unopened mail.

        5.    Opened first class mail will be placed in an envelope and mailed to the new address at the facility's expense.

    C.    Periodicals may be returned to the sender per USPS Domestic Mail Manual.

    D.    Non-profit mail will not be forwarded per USPS Domestic Mail Manual and will be discarded.



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>9/8/20 | PAGE NUMBER<br>18 of 20 | NUMBER<br>**DOC 450.100** |
| **POLICY** | TITLE<br>**MAIL FOR INDIVIDUALS IN PRISON** | | |

E.   An eMessage will not be forwarded unless the individual has transferred to another facility with JPay services and is eligible to receive eMessages at the receiving facility.  An eMessage will be forwarded in electronic format.

XIII.   Mail Between Incarcerated Individuals

A.   Mail between individuals confined in any correctional facility will only be allowed when authorized by both Superintendents/facility administrators/designees.

1.   Mail can only be written material and cannot be property items (e.g., photos, hobby craft).

2.   An individual may communicate with a Special Commitment Center resident, which is not considered a correctional facility.

B.   Incarcerated individuals must meet at least one of the following requirements:

1.   Are members of the same immediate family,

2.   Have a child together, as proven through a birth certificate and only if both individuals still have parental rights, and/or

3.   Are co-parties in an active legal case, or one individual is providing a witness statement in the other individual's active legal case.

C.   The requesting individual will complete and submit DOC 21-746 Approval for Mail between Incarcerated Individuals to the case manager with any supporting documentation.

1.   The case manager will verify the request meets policy requirements and forward the request with any supporting documentation to the Superintendent/designee for a final decision.

2.   Approvals may be accepted by any receiving facility upon an individual's transfer.

3.   Approvals for legal-related correspondence will not be handled as legal mail and will expire when:

a.   Confirmation is received from the Attorney General's Office that the case has been resolved/closed or witness statements have been received, or

b.   When either co-party releases from custody.

28



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 9/8/20 | PAGE NUMBER 19 of 20 | NUMBER **DOC 450.100** |
| **POLICY** | TITLE **MAIL FOR INDIVIDUALS IN PRISON** | | |

4.      Approvals may be revoked at any time by the Superintendent/facility administrator/designee.

XIV.   Mail Records

A.      The Superintendent/designee will designate an employee(s) to manage mail delivery, receipt, and regulations, and maintain a continuous, chronological mail log.  The log will:

1.      Be maintained in the mailroom, living unit office, or mail sorting area for the following types of incoming/outgoing mail:

a.      Legal mail and certified/return receipt/signature confirmation mail
b.      Packages
c.      Items of monetary value (e.g., money orders, cash, cashier's checks)

2.      For legal mail, be documented on DOC 21-286 Legal Mail Log or similar log, including:

a.      Source
b.      Destination
c.      Date received/sent
d.      Description
e.      Printed name and initials of employee distributing the mail

**DEFINITIONS:**

The following words/terms are important to this policy and are defined in the glossary section of the Policy Manual:  Contraband, Immediate Family, Indigent, Legal Mail, Legal Pleadings, Letters, Mail, and Packages.  Other words/terms appearing in this policy may also be defined in the glossary section.

**ATTACHMENTS:**

Unauthorized Mail (Attachment 1)

**DOC FORMS:**

DOC 02-003 Postage Transfer
DOC 05-525 Rejection Notice
DOC 05-774 Foreign Language and Mail Review
DOC 13-508 Accommodation Status Report
DOC 21-286 Legal Mail Log

29



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 9/8/20 | PAGE NUMBER 20 of 20 | NUMBER **DOC 450.100** |
| **POLICY** | TITLE **MAIL FOR INDIVIDUALS IN PRISON** | | |

DOC 21-473 Kite
DOC 21-746 Approval for Mail between Incarcerated Individuals
DOC 21-757 Publication Rejection Appeal

30

**EXHIBIT  2**

# UNAUTHORIZED MAIL

**Mail to or from incarcerated individuals, including publications and eMessages/ attachments, may be rejected for any of the following reasons:**

1.  Not specifically authorized by Department policy or facility procedures

2.  Attempts to establish contact with a person or a person's guardian who has requested not to be contacted by the individual, when the individual is aware or should be aware of the request

3.  Attempts to establish prohibited contact between the sender and recipient, including attempted contact between an employee/contract staff/volunteer found to have committed staff sexual misconduct/harassment and/or any individual in violation of DOC 450.050 Prohibited Contact

4.  Violates sentencing conditions and/or court order

5.  Contains an unknown substance(s) or contraband, or relates to sending contraband in/out of the facility

6.  Contains items written or drawn in crayon or gel pen, contains excessive ink, or contains or has been treated with perfume, glitter, and/or other items that could be easily misidentified

7.  Contains escape plans and/or other information related to escape

8.  Provides technical/detailed information on security systems, equipment, and practices used in the correctional field

9.  Contains plans for activity that violates state/federal law, the Washington Administrative Code, Department policy, and/or facility procedures

10. Contains instructional and/or "how to" material for committing illegal activities

11. Depicts or describes the procedures for constructing or using weapons, ammunition, bombs, and/or other destructive devices, or includes life sized photograph(s)/graphic illustration(s) of these items

12. Provides instructions on martial arts, fighting/self-defense techniques, and/or how to disable/disarm others

13. Appears to be in code

14. Contains written/graphic information on security equipment/operations or facility blueprints/diagrams

15. Contains detailed maps/charts of Washington, Oregon, Idaho, and/or British Columbia, except those received by facility libraries

16. Contains information that could create a risk of physical harm to the individual or another person if the communication were allowed

Exhibit 2

## UNAUTHORIZED MAIL

17.     Contains sexually explicit material per WAC 137-48-020, including altered images, strategically placed graphics/items, or airbrushing.  Publications, letters, or eMessages that contain significant or repeated instances of content defined per WAC 137-48-020(13)(a)-(b) may be rejected.  Publications, letters, or eMessages that contain any content defined per WAC 137-48-020(13)(c)-(d) may be rejected.

18.     The publication(s) is not in English and the Headquarters Correctional Manager cannot confirm that it complies with Department policy and/or facility procedures

19.     Contains publications or documents that have been altered (e.g., pages torn/removed, additional/unnecessary markings), other than legal mail sent from a legal entity/agency

20.     Advocates violence against others and/or the overthrow of authority

21.     Advocates that a protected class or group of individuals is inferior and/or makes such class/group the object of ridicule and/or scorn, and may reasonably be thought to precipitate a violent confrontation between the recipient and a member(s) of the targeted group

22.     Designated as legal/special mail, but upon inspection is determined to be general correspondence

23.     Contains cash or personal check(s)

24.     Contains gang markings/symbols or may reasonably be thought to precipitate violence

25.     Contains multiple or similar copies/photocopies of the same photograph, document, and/or publication/subscription, in whole or part

26.     Contains pre-franked envelopes and/or non-cancelled postage stamps, except eStamps, without prior approval from the Superintendent/designee

27.     Contains correspondence, information, or other items relating to another Washington State incarcerated individual(s) without prior approval from the Superintendent/designee, or attempts or conveys unauthorized correspondence between incarcerated individuals

28.     Contains stickers/labels or a blank greeting card/postcard

29.     Contains a photograph, card, poster, and/or calendar that is padded, laminated/layered, musical, and/or exceeds the storage dimensions per DOC 440.000 Personal Property for Offenders

30.     Contains an unauthorized audio/video recordings, including public disclosure CDs

31.     Contains clipping(s)/copies of copyrighted material, including books.  Single clippings or copies from public domain publications (e.g., newspapers, magazines, websites) are allowed

## UNAUTHORIZED MAIL

32. Contains/attempts to obtain an item(s) not approved and paid for in advance through facility designated channels and/or misuses state resources (e.g., kites, blank forms, use of Department issued computers/equipment)

33. Solicits and/or contains money or anything of value from anyone other than the individual's immediate family member without prior approval from the Superintendent/ designee, except authorized purchases through approved vendors

34. Requests/directs another person to provide money or anything of value to a third party without prior approval from the Superintendent/designee

35. Contains printed material other than correspondence for an individual currently assigned to a Reception Diagnostic Center

36. Contains a metal and/or inflexible binder

37. The eMessage videogram does not comply with mail requirements or otherwise contains a display of nudity, behavior/actions that are sexual in nature, drugs/alcohol or related paraphernalia, weapons, graphics or paraphernalia associated with any Security Threat Group, or unlawful activity

38. Contains copies that are being sent to a Reception Diagnostic Center

39. Contains solicitations or games of chance (e.g., sweepstakes, contests, lottery tickets). Publications containing a sweepstakes or contest entry will not be rejected, but individuals will not be allowed to participate/enter

40. Contains correspondence/property for or from a third party

**EXHIBIT  3**



| | | APPLICABILITY **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | | REVISION DATE 1/23/19 | PAGE NUMBER 1 of 10 | NUMBER **DOC 450.200** |
| **POLICY** | | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

**REVIEW/REVISION HISTORY:**

Effective:   10/1/80 DOC 450.010
Revised:     10/1/85
Revised:     3/31/91 DOC 450.200
Revised:     12/31/96
Revised:     6/12/00
Revised:     11/6/00
Revised:     5/9/03
Revised:     7/5/05
Reviewed:    7/17/06
Revised:     7/31/07
Revised:     3/5/09
Revised:     1/12/10
Revised:     1/9/12
Revised:     1/13/14
Revised:     3/16/15
Revised:     11/21/15
Revised:     1/23/19

**SUMMARY OF REVISION/REVIEW:**

Major changes to include adding the use of a Video Relay System.  Read carefully!

**APPROVED:**

Signature on file

_____
**STEPHEN SINCLAIR**, Secretary
Department of Corrections

1/3/19
_____
Date Signed

Exhibit 3



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE**<br>1/23/19 | **PAGE NUMBER**<br>2 of 10 | **NUMBER**<br>**DOC 450.200** |
| **POLICY** | **TITLE**<br>**TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; RCW 9.73.095; WAC 137-25-030; WAC 137-48-080; DOC 450.050 Prohibited Contact; DOC 690.400 Offenders with Disabilities; DOC 460.050 Disciplinary Sanctions

**POLICY:**

I.     Incarcerated individuals are provided access to public telephones subject to limitations and restrictions to ensure the security and orderly management of the facility and to protect the public.

II.    Incarcerated individuals will have access to reasonably priced telephone services.  The Department will ensure that contracts involving telephone services used by incarcerated individuals:

   A.    Comply with all applicable state and federal regulations.

   B.    Establish rates and surcharges that are comparable with those charged to the general public for like services.  Any deviation from ordinary consumer rates will reflect actual costs associated with providing services in a correctional setting.

   C.    Provide the broadest range of calling options determined by the Secretary to be consistent with the requirements of sound correctional management.

III.   Prisons use a telephone monitoring/recording system to enhance security, increase safety, and reduce criminal activity or activity that could threaten the orderly operation of the facility.

   A.    The constitutional rights of incarcerated individuals will be protected by providing for unmonitored legal phone calls.

IV.    Prison telephone systems will require incarcerated individuals to use an Inmate Personal Identification Number (IPIN) when placing calls, so the caller can be identified in the event of a security concern or a complaint from the public.

**DIRECTIVE:**

I.     Telephone Use in Prisons

   A.    Inmate Personal Identification Number (IPIN)

      1.    Incarcerated individuals will be assigned an IPIN during reception at the Washington Corrections Center (WCC) and the Washington Corrections Center for Women (WCCW) Reception Diagnostic Centers.



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | | |
| --- | --- | --- | --- |
| | REVISION DATE<br>1/23/19 | PAGE NUMBER<br>3 of 10 | NUMBER<br>**DOC 450.200** |
| **POLICY** | TITLE<br>**TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

       a.    Violators returned to a facility will be issued their previous IPIN.

  2.    Each individual will sign DOC 21-421 Prison Telephone Use Acknowledgment.

       a.    A training video will be shown in English or Spanish during orientation including how to use an IPIN.

       b.    An individual's IPIN will remain the same throughout his/her incarceration unless lost, stolen, or compromised.

       c.    Individuals will be responsible for the security of their IPINs.

  3.    Records employees will scan the completed DOC 21-421 Prison Telephone Use Acknowledgment into the individual's electronic imaging file.

  4.    Individuals should report non-working phones or IPINs by calling 555-1212, with the appropriate area code, or by submitting a completed DOC 21-754 Telephone Action to their assigned Classification Counselor or Correctional Unit Supervisor.  S/he will contact the Special Investigations Services (SIS) Unit Telephone Site Administrator at Headquarters to have the problem resolved as soon as possible.

       a.    Individuals will be charged $3.00 for a replacement IPIN unless indigent or proof of theft exists.

B.    Personal Allowed Number (PAN) List

  1.    Incarcerated individuals will have a PAN list of up to 25 telephone numbers s/he will be allowed to call.

  2.    An initial PAN list will include the telephone numbers of the first 25 successfully connected calls.

       a.    Up to 5 telephone numbers may be added every 30 days.  There is no limit on deleting telephone numbers.

  3.    Individuals approved to use Video Relay Services (VRS) will submit DOC 21-754 Telephone Action to request changes to their PAN list.

  4.    Per DOC 450.050 Prohibited Contact, in cases of substantiated staff sexual misconduct/harassment, the employee/contract staff/volunteer will be removed from any PAN list s/he is on and will not be added to an individual's PAN list until the contact restrictions have been lifted.



| | **APPLICABILITY** |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS |

| **REVISION DATE** | **PAGE NUMBER** | **NUMBER** |
|---|---|---|
| 1/23/19 | 4 of 10 | **DOC 450.200** |

**POLICY**

**TITLE**
**TELEPHONE USE BY INCARCERATED INDIVIDUALS**

---

5.  Individuals will be responsible for maintaining their PAN list.  Printed PAN lists will not be provided.

6.  PAN lists will transfer with individuals when transferring to other Department Prisons.

C.  Personal Calls Initiated by Incarcerated Individuals

1.  Signs will be posted advising incarcerated individuals that their calls may be monitored and recorded.

2.  Individuals will not:

    a.  Use the telephone system to continue or initiate criminal activity, or
    b.  Have unsupervised access to employee telephones.

3.  Superintendents will set hours of availability and limitations for personal calls.

4.  Individuals will have personal access to designated telephones located in accessible areas.  Telephones will place collect calls, or allow prepaid or debit options when available.  Custom call features (e.g., 3-way calling, call forwarding) are not permitted.

5.  Individuals must enter their IPIN to initiate a telephone call and are responsible for all calls made using their assigned IPIN.  An IPIN will work at the facility where the individual is assigned.

    a.  At the beginning of each call, a recorded message will be played to notify the recipient:

        1)  That the call is originating from an individual incarcerated at a Washington State Department of Corrections facility,

        2)  Of the name of the caller,

        3)  To hang up if s/he does not wish to receive the call or press the appropriate key to block the call, and

        4)  That the call will be recorded and may be monitored.

6.  Telephones are programmed to restrict calls to 20 minutes.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 1/23/19 | PAGE NUMBER 5 of 10 | NUMBER **DOC 450.200** |
| **POLICY** | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

    a.    Individuals identified as having a hearing and/or speech disability that are using a Teletypewriter (TTY)/Telecommunications Device for the Deaf (TDD) or VRS are restricted to 30 minutes.

7.    Individuals with hearing and/or speech disabilities, and those who wish to communicate with parties who have such disabilities, will have access to a TTY/TDD or VRS.

    a.    Individuals must have an approved Accommodation Status Report per DOC 690.400 Offenders with Disabilities before being allowed to use VRS or a TTY/TTD.

    b.    Except for legal calls, telephone calls by incarcerated individuals placed from any telephone line on a TTY/TDD or VRS are subject to the same monitoring as all other telephone calls initiated by incarcerated individuals.

    c.    Deaf or hard of hearing individuals may be required to use a teletype roll of paper with the TTY/TDD.  When the call is completed, the used teletype paper will be turned in to designated employees for monitoring purposes.

8.    An incarcerated individual who has an incarcerated spouse/state registered domestic partner may be allowed one non-IPIN, monitored State Controlled Area Network (SCAN) call every 30 days.

    a.    The requesting individual will submit DOC 21-572 Request for Inter-Facility Telephone Communication.

    b.    The Superintendent/designee of each facility must approve.

    c.    These calls will be arranged, supervised, and documented by designated employees.

    d.    The individual must provide proof of marriage or state registered domestic partnership before SCAN calls are placed.

    e.    The call will not exceed 20 minutes.

9.    Superintendents or designees may permit an individual the use of a non-IPIN SCAN telephone line under compelling circumstances, such as family emergencies.  These calls will be placed and supervised by employees.

10.    Any violations of this policy may result in the loss or suspension of telephone privileges via the disciplinary or classification process.

11.    An individual who is found guilty of an 882 violation will be sanctioned per DOC 460.050 Disciplinary Sanctions and his/her IPIN will be blocked.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 1/23/19 | PAGE NUMBER 6 of 10 | NUMBER **DOC 450.200** |
| **POLICY** | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

    a. To block the IPIN, the assigned Disciplinary Hearing Officer will contact the:

        1) Intelligence and Investigations Unit employees at medium and close facilities, or

        2) Lieutenant at minimum facilities.

D. Calls to Attorneys and Consular Officers

    1. Calls from incarcerated individuals to their attorney made to a telephone number recognized by the applicable state's bar association will not be intercepted, recorded, or monitored.  This includes calls placed on a TTY/TTD or VRS.

        a. Individuals will use a telephone designated for incarcerated individuals to call their attorney.

        b. To ensure that calls from individuals are not recorded, attorneys will provide their telephone number to the Chief of Investigative Operations/designee, who will verify the number with the applicable bar association.  Individuals may call their attorney at another telephone number, but those calls may be recorded.

    2. Individuals who are foreign nationals will have access to a diplomatic representative of their country of citizenship.  Calls to consular officers that meet the following requirements will not be intercepted, recorded, or monitored:

        a. The individual will provide employees with the name, location, and telephone number of the consular officer.

        b. Employees will verify the information provided.  The verification need not be made in the individual's presence.

            1) Employees will call the Locator Operator of the U.S. Department of State at (202) 647-4000 to confirm the telephone number of the individual's nearest consular officer.

        c. All calls to consular officers will be placed by employees on a designated telephone.  Employees will not listen to the conversation, but will maintain visual contact with the individual when in an area where security or information may be compromised.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 1/23/19 | PAGE NUMBER 7 of 10 | NUMBER **DOC 450.200** |
| **POLICY** | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

    d.    The individual, or his/her consular officer, will be responsible for the cost of the unmonitored and unrecorded telephone calls.

E.    Telephone Use in Work Assignments

    1.    Superintendents must review and approve each incarcerated individual who will have access to telephones as part of his/her assigned work program. Access will be denied to individuals with a conviction for or history of:

        a.    A sex offense, or
        b.    Fraud or other predatory behavior where the individual demonstrated a process of grooming the victim through stalking or otherwise laying the groundwork for the criminal act.

    2.    Incarcerated individuals will not be allowed to access or place telephone calls from their work areas unless:

        a.    Employees place the call and the person receiving the call is notified that s/he will be talking to an incarcerated individual,

        b.    The call is part of a tele-answering program for Correctional Industries customers who are notified they will be talking to an incarcerated individual, or

        c.    The individual needs to speak to employees/contract staff or other incarcerated workers to conduct work-related discussions and an employee places the call.

    3.    Exceptions to requirements for telephone use in work assignments may be approved in writing by the Deputy Director with a copy forwarded to the Assistant Secretary for Prisons.

F.    Access to Telephone Numbers

    1.    Incarcerated individuals will not have unsupervised access to white page listings of any public telephone directory.

    2.    Telephone directories are not allowed in any common area for incarcerated individuals.

42



| | APPLICABILITY | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
| | REVISION DATE 1/23/19 | PAGE NUMBER 8 of 10 | NUMBER **DOC 450.200** |
| **POLICY** | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

G.     Telephone Monitoring

1.     The Chief of Investigative Operations/designee has overall responsibility for the recording and monitoring of telephones used by incarcerated individuals.

2.     The nature and capabilities of the telephone monitoring systems are considered confidential and will not be discussed with general employees or in front of incarcerated individuals.

3.     The following employees are authorized to intercept, record, and divulge telephone calls from an individual using the monitored telephone system:

    a.     Chief of Investigative Operations,

    b.     Investigators assigned to conduct workplace investigations,

    c.     Security Threat Intelligence and Narcotics Group Investigators,

    d.     Intelligence and Investigations Unit (IIU) employees, and/or

    e.     Other specific employees designated by the Superintendent or Chief of Investigative Operations.

4.     The Deaf Services Coordinator may translate calls made using the VRS when requested by the IIU.

5.     Employees must successfully complete training before they can monitor or record incarcerated individuals' phone calls.

    a.     Training will be coordinated with the telephone vendor and will include:

        1)     Applicable administrative regulations,

        2)     The legal aspects of monitoring,

        3)     Reporting responsibilities,

        4)     Confidentiality requirements, and

        5)     Technical instruction in monitoring/recording equipment use.

    b.     Employees not attending formal training by the vendor will receive 4 hours of onsite training before monitoring or recording phone calls.

        1)     The Chief of Investigative Operations/designee will provide the training and document on DOC 21-372 Acknowledgment of Training for Telephone Monitoring/Recording.

    c.     The Training and Development Unit will maintain records of completed training.

43



| | APPLICABILITY **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | REVISION DATE 1/23/19 | PAGE NUMBER 9 of 10 | NUMBER **DOC 450.200** |
| **POLICY** | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

6.   Disclosure

    a.   All recordings will be maintained per RCW 9.73.095.

    b.   The contents of an intercepted and recorded telephone conversation will be disclosed only as necessary to safeguard the orderly operation of the facility, in response to a court order, or in the prosecution or investigation of a crime.

       1)   The Attorney General's Office will review all court orders before disclosure of recordings to ensure that they have been lawfully served.

    c.   When the recording is used as evidence of an infraction, the infraction will start by indicating the incarcerated individual was overheard, and include the information that was discussed and what was said to warrant the infraction.  The Disciplinary Hearing Officer may listen to the telephone call before the hearing.  An incarcerated individual will never have access to or listen to a recorded call.

    d.   Employees authorized to intercept, record, and divulge telephone calls will not disclose copies of recordings from the telephone system without the Chief of Investigative Operations approval.

    e.   An outside agency conducting a criminal investigation or prosecution of any crime may request a recording by submitting a signed, written request on agency letterhead to the Chief of Investigative Operations.

    f.   Recording equipment will be installed per approved telecommunication guidelines.

II.   Telephone Use by Incarcerated Individuals in Work Releases

    A.   Individuals will use pay phones while in Work Release.

    B.   Individuals with hearing and/or speech disabilities, and those who wish to communicate with parties who have such disabilities, will have access to a TTY/TDD and/or VRS or comparable equipment.  Public telephones with volume control will also be available to individuals who are hard of hearing.

**DEFINITIONS:**



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 1/23/19 | PAGE NUMBER 10 of 10 | NUMBER **DOC 450.200** |
| **POLICY** | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

Words/terms appearing in this policy may be defined in the glossary section of the Policy Manual.

**ATTACHMENTS:**

None

**DOC FORMS:**

DOC 21-372 Acknowledgment of Training for Telephone Monitoring/Recording
DOC 21-421 Prison Telephone Use Acknowledgment
DOC 21-572 Request for Inter-Facility Telephone Communication
DOC 21-754 Telephone Action

# EXHIBIT  4



| | **APPLICABILITY** | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
| | **REVISION DATE** 6/14/21 | **PAGE NUMBER** 1 of 10 | **NUMBER** **DOC 450.200** |
| **POLICY** | **TITLE** **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

**REVIEW/REVISION HISTORY:**

| Effective: | 10/1/80 DOC 450.010 | Revised: | 7/31/07 |
|---|---|---|---|
| Revised: | 10/1/85 | Revised: | 3/5/09 |
| Revised: | 3/31/91 DOC 450.200 | Revised: | 1/12/10 |
| Revised: | 12/31/96 | Revised: | 1/9/12 |
| Revised: | 6/12/00 | Revised: | 1/13/14 |
| Revised: | 11/6/00 | Revised: | 3/16/15 |
| Revised: | 5/9/03 | Revised: | 11/21/15 |
| Revised: | 7/5/05 | Revised: | 1/23/19 |
| Reviewed: | 7/17/06 | Revised: | 6/14/21 |

**SUMMARY OF REVISION/REVIEW:**

Policy Statement II.B., Directive I.A., I.A.2.a., I.A.3., I.B., I.B.1., I.C.1., I.D.5.a.3), I.D.8., I.F., I.F.2.a., I.G.3.b., I.H.2., and I.H.5.a. - Adjusted language for clarification

I.A.4., I.C.4., I.C.5., I.D.9., I.D.11., I.D.11.a., I.D.F.1., I.H.5.c., and II.C. - removed unnecessary language

Added. I.B.1.b. that the vendor may be contacted for issues with a phone used by incarcerated individuals

I.E., I.E.1., II.A., and II.B. - Added clarifying language

Removed I.E.2.d. that the individual/consular officer will be responsible for the cost of unmonitored/unrecorded telephone calls

Added I.H.6.e. that IIU Investigators may disclose recordings to law enforcement agencies

**APPROVED:**

Signature on file

_____
**JULIE A. MARTIN**, Acting Secretary
Department of Corrections

5/10/21
_____
Date Signed

Exhibit 4



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/14/21 | 2 of 10 | **DOC 450.200** |

**POLICY**

| TITLE |
|---|
| **TELEPHONE USE BY INCARCERATED INDIVIDUALS** |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; RCW 9.73.095; RCW 43.06C.060; WAC 137-25-030; WAC 137-48-080; DOC 450.050 Prohibited Contact; DOC 460.050 Disciplinary Sanctions; DOC 690.400 Individuals with Disabilities

**POLICY:**

I.     Incarcerated individuals are provided access to public telephones subject to limitations and restrictions to ensure the security and orderly management of the facility and to protect the public.

II.    Incarcerated individuals will have access to reasonably priced telephone services.  The Department will ensure that contracts involving telephone services used by incarcerated individuals:

    A.    Comply with all applicable state and federal regulations.

    B.    Negotiate and establish rates and surcharges that are comparable with those charged to the public for like services.  Any deviation from ordinary consumer rates will reflect actual costs associated with providing services in a correctional setting.

    C.    Provide the broadest range of calling options determined by the Secretary to be consistent with the requirements of sound correctional management.

III.   Prisons use a telephone monitoring/recording system to enhance security, increase safety, and reduce criminal activity or activity that could threaten the orderly operation of the facility.

    A.    The constitutional rights of incarcerated individuals will be protected by providing for unmonitored legal phone calls.

IV.    Prison telephone systems will require incarcerated individuals to use an Inmate Personal Identification Number (IPIN) when placing calls, so the caller can be identified in the event of a security concern or a complaint from the public.

**DIRECTIVE:**

I.     Telephone Use in Prisons

    A.    Incarcerated individuals will be assigned an IPIN during reception at a Reception Diagnostic Center.

        1.    Violators returned to a facility will be issued their previous IPIN.

48



| | APPLICABILITY | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
| | **REVISION DATE** 6/14/21 | **PAGE NUMBER** 3 of 10 | **NUMBER** DOC 450.200 |
| **POLICY** | **TITLE** **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

2.    Each individual will sign DOC 21-421 Prison Telephone Use Acknowledgment.

    a.    Records employees will scan the completed form into the individual's electronic imaging file.

3.    Instructions will be provided in English or Spanish during orientation that shows how to use an IPIN.

4.    An individual's IPIN will remain the same throughout incarceration unless lost, stolen, or compromised.

5.    Individuals will be responsible for the security of their IPINs.

B.    Individuals should report non-working phones or IPINs by calling 555-1212, with the appropriate area code, or by submitting a completed DOC 21-754 Telephone Action to their case manager or Correctional Unit Supervisor (CUS).

    1.    The case manager/CUS:

        a.    Will contact the Special Investigations Services (SIS) Unit Telephone Site Administrator at Headquarters to have the problem resolved as soon as possible.

        b.    May email the vendor Site Administrator for issues with a phone used by incarcerated individuals at: dociiphones@doc1.wa.gov.

    2.    Individuals will be charged $3.00 for a replacement IPIN unless indigent or proof of theft exists.

C.    Personal Allowed Number (PAN) List

    1.    An incarcerated individual will have a PAN list of up to 25 telephone numbers the individual will be allowed to call.

    2.    An initial PAN list will include the telephone numbers of the first 25 successfully connected calls.

        a.    Up to 5 telephone numbers may be added every 30 days.  There is no limit on deleting telephone numbers.

    3.    Individuals approved to use Video Relay Services (VRS) will submit DOC 21-754 Telephone Action to request changes to their PAN list.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE** 6/14/21 | **PAGE NUMBER** 4 of 10 | **NUMBER** DOC 450.200 |
| **POLICY** | **TITLE** **TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

4.  Per DOC 450.050 Prohibited Contact, in cases of substantiated staff sexual misconduct/harassment, the employee/contract staff/volunteer will be removed from any PAN list and will not be added to an individual's PAN list until the contact restrictions have been lifted.

5.  Individuals will be responsible for maintaining their PAN list. Printed PAN lists will not be provided.

6.  PAN lists will transfer with individuals when transferring to other Department Prisons.

D.  Personal Calls Initiated by Incarcerated Individuals

1.  Signs will be posted advising incarcerated individuals that their calls may be monitored and recorded.

2.  Individuals will not:

    a.  Use the telephone system to continue or initiate criminal activity, or
    b.  Have unsupervised access to employee telephones.

3.  Superintendents will set hours of availability and limitations for personal calls.

4.  Individuals will have personal access to designated telephones located in accessible areas.

    a.  Telephones will place collect calls or allow prepaid or debit options when available.

    b.  Custom call features (e.g., 3-way calling, call forwarding) are not permitted.

5.  Individuals must enter their IPIN to initiate a telephone call and are responsible for all calls made using their assigned IPIN.

    a.  At the beginning of each call, a recorded message will be played to notify the recipient:

        1)  That the call is originating from an individual incarcerated at a Washington State Department of Corrections facility,

        2)  Of the name of the caller,



| | | |
|---|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/14/21 | 5 of 10 | **DOC 450.200** |

**POLICY**

| TITLE |
|---|
| **TELEPHONE USE BY INCARCERATED INDIVIDUALS** |

        3)    To hang up if the recipient does not wish to receive the call or press the appropriate key to block the call, and

        4)    That the call will be recorded and may be monitored.

6.    Telephones are programmed to restrict calls to 20 minutes.

    a.    Individuals identified as having a hearing and/or speech disability that are using a Teletypewriter (TTY)/Telecommunications Device for the Deaf (TDD) or VRS are restricted to 30 minutes.

7.    Individuals with hearing and/or speech disabilities, and those who wish to communicate with parties who have such disabilities, will have access to a TTY/TDD or VRS.

    a.    Individuals must have an approved Accommodation Status Report per DOC 690.400 Individuals with Disabilities before being allowed to use a TTY/TTD or VRS.

    b.    Except for legal calls, telephone calls by incarcerated individuals placed from any telephone line on a TTY/TDD or VRS are subject to the same monitoring as all other telephone calls initiated by incarcerated individuals.

    c.    Deaf or hard of hearing individuals may be required to use a teletype roll of paper with the TTY/TDD.  When the call is completed, the used teletype paper will be turned in to designated employees for monitoring purposes.

8.    An incarcerated individual who has an incarcerated spouse/state registered domestic partner may be allowed one non-IPIN, monitored State Controlled Area Network (SCAN) call 2 times per month.

    a.    The requesting individual will submit DOC 21-572 Request for Inter-Facility Telephone Communication.

    b.    The Superintendent/designee of each facility must approve.

    c.    These calls will be arranged, supervised, and documented by designated employees.

    d.    The individual must provide proof of marriage or state registered domestic partnership before SCAN calls are placed.

    e.    The call will not exceed 20 minutes.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/14/21 | 6 of 10 | **DOC 450.200** |

| **POLICY** | TITLE<br>**TELEPHONE USE BY INCARCERATED INDIVIDUALS** |
|---|---|

9. Superintendents or designees may permit an individual the use of a non-IPIN SCAN telephone line under compelling circumstances (e.g., family emergencies). These calls will be placed and supervised by an employee.

10. Any violations of this policy may result in the loss or suspension of telephone privileges via the disciplinary or classification process.

11. An individual who is found guilty of an 882 violation will be sanctioned per DOC 460.050 Disciplinary Sanctions and the IPIN will be blocked.

    a. To block the IPIN, the assigned Disciplinary Hearing Officer will contact the Intelligence and Investigations Unit employees at Level 3 and higher facilities or Lieutenant at Level 2 facilities.

E. Calls to the Office of Correctional Ombuds (OCO), Attorneys, and Consular Officers

1. Calls on a telephone designated for incarcerated individuals to call their attorney or OCO will not be intercepted, recorded, or monitored. This includes calls placed on a TTY/TTD or VRS.

    a. To ensure that calls from individuals are not recorded, attorneys will provide their telephone number to the Chief of Investigative Operations/designee, who will verify the number with the applicable bar association.

    b. Individuals may call their attorney at another telephone number, but those calls may be recorded.

2. Individuals who are foreign nationals will have access to a diplomatic representative of their country of citizenship. Calls to consular officers that meet the following requirements will not be intercepted, recorded, or monitored:

    a. The individual will provide employees with the name, location, and telephone number of the consular officer.

    b. Employees will verify the information provided. The verification need not be made in the individual's presence.

        1) Employees will call the Locator Operator of the U.S. Department of State at (202) 647-4000 to confirm the telephone number of the individual's nearest consular officer.

52



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>6/14/21 | PAGE NUMBER<br>7 of 10 | NUMBER<br>**DOC 450.200** |
| **POLICY** | TITLE<br>**TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

    c.    All calls to consular officers will be placed by employees on a designated telephone.

        1)    Employees will not listen to the conversation but will maintain visual contact with the individual when in an area where security or information may be compromised.

F.    Telephone Use in Work Assignments

    1.    Superintendents must review and approve each incarcerated individual who will have access to telephones as part of an assigned work program. Access will be denied to individuals with a conviction for or history of:

        a.    A sex offense, or
        b.    Fraud or other predatory behavior where the individual demonstrated a process of grooming the victim through stalking or otherwise laying the groundwork for the criminal act.

    2.    Incarcerated individuals will not be allowed to access or place telephone calls from their work areas unless:

        a.    An employee places the call and:

            1)    The person receiving the call is notified that the person will be talking to an incarcerated individual, or

            2)    The individual needs to speak to employees/contract staff or other incarcerated workers to conduct work-related discussions.

        b.    The call is part of a tele-answering program for Correctional Industries customers who are notified they will be talking to an incarcerated individual.

    3.    Exceptions to requirements for telephone use in work assignments may be approved in writing by the Deputy Director with a copy forwarded to the Assistant Secretary for Prisons.

G.    Access to Telephone Numbers

    1.    Incarcerated individuals will not have unsupervised access to white page listings of any public telephone directory.

    2.    Telephone directories are not allowed in any common area for incarcerated individuals.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON **DEPARTMENT OF CORRECTIONS** | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS |

| | REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|---|
| | 6/14/21 | 8 of 10 | **DOC 450.200** |

| **POLICY** | TITLE **TELEPHONE USE BY INCARCERATED INDIVIDUALS** |
|---|---|

H.   Telephone Monitoring

1.   The Chief of Investigative Operations/designee has overall responsibility for the recording and monitoring of telephones used by incarcerated individuals.

2.   The nature and capabilities of the telephone monitoring systems are considered confidential and will not be discussed in front of incarcerated individuals or with employees unless they have a need to know.

3.   The following employees are authorized to intercept, record, and divulge telephone calls from an individual using the monitored telephone system:

a.   Chief of Investigative Operations,
b.   Workplace Investigations Unit employees,
c.   Security Threat Intelligence and Narcotics Group Investigators,
d.   Intelligence and Investigations Unit (IIU) employees, and/or
e.   Other specific employees designated by the Superintendent or Chief of Investigative Operations.

4.   The Deaf Services Coordinator may translate calls made using the VRS when requested by the IIU.

5.   Employees must successfully complete training before they can monitor or record incarcerated individuals' phone calls.

a.   Training will be coordinated with the Headquarters Site Administrator.

b.   Employees not attending formal training by the vendor will receive 4 hours of onsite training before monitoring or recording phone calls.

1)   The Chief of Investigative Operations/designee will provide the training and document on DOC 21-372 Acknowledgment of Training for Telephone Monitoring/Recording.

6.   Disclosure

a.   All recordings will be maintained per RCW 9.73.095.

b.   The contents of an intercepted and recorded telephone conversation will be disclosed only as necessary to safeguard the orderly operation of the facility, in response to a court order, or in the prosecution or investigation of a crime.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/14/21 | 9 of 10 | **DOC 450.200** |

**POLICY**

| TITLE |
|---|
| **TELEPHONE USE BY INCARCERATED INDIVIDUALS** |

    1)    The Attorney General's Office will review all court orders before disclosure of recordings to ensure that they have been lawfully served.

    c.    When the recording is used as evidence of an infraction, the infraction will start by indicating the incarcerated individual was overheard and include the information that was discussed and what was said to warrant the infraction.

        1)    The Disciplinary Hearing Officer may listen to the telephone call before the hearing.

        2)    An incarcerated individual will never have access to or listen to a recorded call.

    d.    Employees authorized to intercept, record, and divulge telephone calls will not disclose copies of recordings from the telephone system without the Chief of Investigative Operations approval.

    e.    IIU Investigators may disclose recordings to law enforcement agencies when related to a case initiated by the local IIU and changes from an administrative case to a criminal case.

        1)    All recordings will be audited by the Chief of Investigative Operations/designee and must include supporting case documentation.

    f.    An outside agency conducting a criminal investigation or prosecution of any crime may request a recording by submitting a signed, written request on agency letterhead to the Chief of Investigative Operations.

    g.    Recording equipment will be installed per approved telecommunication guidelines.

II.    Telephone Use by Incarcerated Individuals in Work/Training Release

    A.    Individuals will use pay phones while in a Work/Training Release.

    B.    Individuals with hearing and/or speech disabilities, and those who wish to communicate with parties who have such disabilities, will have access to a TTY/TDD and/or VRS or comparable equipment.



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>6/14/21 | PAGE NUMBER<br>10 of 10 | NUMBER<br>**DOC 450.200** |
| **POLICY** | TITLE<br>**TELEPHONE USE BY INCARCERATED INDIVIDUALS** | | |

      C.    Public telephones with volume control will be available to individuals who are hard of hearing.

**DEFINITIONS:**

Words/terms appearing in this policy may be defined in the glossary section of the Policy Manual.

**ATTACHMENTS:**

None

**DOC FORMS:**

DOC 21-372 Acknowledgment of Training for Telephone Monitoring/Recording
DOC 21-421 Prison Telephone Use Acknowledgment
DOC 21-572 Request for Inter-Facility Telephone Communication
DOC 21-754 Telephone Action

**EXHIBIT  5**



| | | |
|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY** **PRISON** OFFENDER/SPANISH MANUALS | |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/11/20 | 1 of 12 | **DOC 450.300** |

# POLICY

**TITLE**
**VISITS FOR INCARCERATED INDIVIDUALS**

**REVIEW/REVISION HISTORY:**

Effective:    1/7/00
Revised:      2/20/03
Revised:      11/15/06
Revised:      4/18/07 AB 07-012
Revised:      2/20/09
Revised:      2/1/10
Revised:      2/4/11
Revised:      6/1/13
Revised:      2/2/15
Revised:      11/21/15
Revised:      9/1/16
Revised:      5/29/18
Revised:      7/11/18
Revised:      5/7/19
Revised:      6/11/20

**SUMMARY OF REVISION/REVIEW:**

Removed reference to "Immediate Family" from Policy Statement III. to the Definitions section.

**APPROVED:**

Signature on file

_____          6/1/20
**STEPHEN SINCLAIR**, Secretary          Date Signed
Department of Corrections

Exhibit 5



| | APPLICABILITY |
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON**<br>OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/11/20 | 2 of 12 | **DOC 450.300** |

**POLICY**

| TITLE |
|---|
| **VISITS FOR INCARCERATED INDIVIDUALS** |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; RCW 9.94.043; RCW 9.94.045; WAC 137-28; DOC 100.560 Non-Discrimination and Accessibility for Visitors/Guests with Disabilities; DOC 150.150 Visits and Tours of Department Facilities and Offices; DOC 420.340 Searching and Detaining Facility Visitors; DOC 460.000 Disciplinary Process for Prisons; DOC 460.050 Disciplinary Sanctions; DOC 590.100 Extended Family Visiting

**POLICY:**

I.      The Department recognizes the vital role families play in the reentry process and will support incarcerated individuals in maintaining ties with family, friends, and the community by engaging them and setting reasonable criteria for personal visits.

    A.      Visitors are encouraged to provide feedback to enhance the visit experience. Any form of retaliation toward those who provide feedback will not be tolerated.

II.     Visiting privileges will not be denied on the basis of race, religion, sex, national origin, sexual orientation, gender identity, or physical disability.

**DIRECTIVE:**

I.      General Guidelines

    A.      The Department will provide visiting opportunities and programs and a secure and welcoming visit space for incarcerated individuals and their families to provide as normal a family experience as possible by:

        1.      Providing sufficient and safe space for contact visiting and, if necessary, no contact visiting consistent with custody level.  Visit areas will be designed by taking the following into consideration:

            a.      Designated visit areas should include a section that has a child-friendly environment with toys and games suitable for interaction by family members of all ages.

            b.      Reasonable accommodation will be provided for visitors with disabilities per DOC 100.560 Non-Discrimination and Accessibility for Visitors/Guests with Disabilities.

                1)      Service dogs that meet the requirements of the Americans with Disabilities Act will be allowed in visiting areas with their owner per Attachment 2.

            c.      Appropriate seating for all ages should be provided.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/11/20 | 3 of 12 | **DOC 450.300** |

| **POLICY** | TITLE **VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

    d.    Space is adequately designed to permit screening and searching of both incarcerated individuals and visitors.

    e.    Space may be provided for the proper storage of visitors' coats, handbags, and other personal items not allowed into the visiting area.

  2.    Informing all visit employees of the importance of visiting to maintain ties with family and friends, and in some cases reunification of individuals with their families and significant others.

  3.    Actively encouraging a collaborative working relationship with social service and other private community-based organizations providing transportation, housing, food, clothing, and other assistance to individuals and their families.

B.    Reasonable efforts will be made to ensure the visiting facility is comfortable, pleasant, and permits informal communication and limited, appropriate physical contact.

C.    The Headquarters Visit Unit will ensure:

  1.    All visitor information is entered in the statewide visit system, including visit application information and identified areas of concern, and

  2.    Application status (i.e., pending, approved, denied, rejected) is updated as soon as possible and emailed to the applicant or sent through the United States Postal Service (USPS) when email is not an option.

D.    Each Superintendent will establish a process to ensure the following information is entered into the statewide visit system:

  1.    A record of each visit,

  2.    A picture of each visitor at the first visit, which will be updated when his/her appearance changes or every 2 years for minors, and

  3.    The Statewide Visit Specialist, Communications Director, and DOC Webmaster are notified when visit room closures occur.

E.    Extended family visiting opportunities are available per DOC 590.100 Extended Family Visiting.

F.    Video visiting opportunities are available per Attachment 1.



| | | |
|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | |

| **REVISION DATE**<br>6/11/20 | **PAGE NUMBER**<br>4 of 12 | **NUMBER**<br>**DOC 450.300** |
|---|---|---|

| **POLICY** | **TITLE**<br>**VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

II.   Eligible Visitors

   A.   Visitors must be approved per the approval process and added to the incarcerated individual's approved visitor list before being allowed to visit unless authorized by the Superintendent.

   1.   Professional visitors are identified as individuals working in a professional capacity (e.g., attorney, clergy, social worker not escorting a minor), are not required to be on the approved visitor list, and will request visits per DOC 150.150 Visits and Tours of Department Facilities and Offices.

   B.   Approved minors (i.e., under 18 years of age and not legally emancipated) may participate in visiting an incarcerated individual when escorted by someone on that individual's approved visitor list, who is:

   1.   A designated adult escort (e.g., an approved non-incarcerated parent/legal guardian, government designated escort,) listed on a notarized DOC 20-441 Parent/Guardian Consent for Minor Visit and/or Escort.

   a.   This form should be submitted before the date of the visit to the Headquarters Visit Unit.

   2.   Another approved minor listed on the approved visitor list when s/he is the parent of the minor and the visit is approved by the Superintendent/ designee.

   a.   Unless the minor parent is legally emancipated, both the minor parent and minor child(ren) must be escorted by an approved adult on the individual's approved visitor list.

   3.   Government designated escorts (e.g., guardian ad litem, court-appointed special advocate, government caseworker/visit supervisor) must submit DOC 20-182 Government Designated Escort Application to escort an approved minor.  The Visit Unit will verify the authenticity of the applicant.

   C.   Current and former Department employees, contract staff, and volunteers who are immediate family must attach DOC 20-450 Approval for Visits by Current/Former Employee, Contract Staff, or Volunteer to the visit application.

   1.   Former Department employees, contract staff, and volunteers who are not immediate family may request visiting privileges after 3 years has elapsed from the last date of employment/work for the Department.

III.   Ineligible visitors

61



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE** 6/11/20 | **PAGE NUMBER** 5 of 12 | **NUMBER** DOC 450.300 |
| **POLICY** | TITLE **VISITS FOR INCARCERATED INDIVIDUALS** | | |

A.    The following are ineligible to visit incarcerated individuals:

   1.    A victim of the incarcerated individual's current offense(s) or any previous adjudicated offense.

      a.    Exceptions may be granted for immediate family members by the Assistant Secretary for Prisons.

      b.    A minor may be denied due to the nature of a crime of conviction if s/he is profiled as comparable to that of a victim.

   2.    Persons involved with the incarcerated individual in the commission of the offense for which s/he is incarcerated.

      a.    Exceptions may be granted by the Assistant Secretary for Prisons/Headquarters Correctional Program Administrator for immediate family members or if there is a clear demonstration the visits would benefit the incarcerated individual.

   3.    Persons restricted per the Judgment and Sentence (J & S), including conditions of community supervision that prohibit contact with an individual or category of individuals.

      a.    Although supervised visits may be allowed per the J & S, supervision by facility visit employees does not constitute supervised visiting as required by court orders.

   4.    Persons who have any conviction(s) for introduction of contraband into a jail or prison setting.

   5.    Persons with pending charges.

   6.    Current Department employees, contract staff, and volunteers who are not immediate family are not eligible for visits.

B.    Persons with felony convictions are not eligible to apply for visiting privileges for 2 years after expiration of the sentence, community supervision, or conditions of a deferred sentence with the following exceptions:

   1.    Immediate family members with proof of relationship may be considered for visit privileges one year from the date of closure or with permission from his/her Community Corrections Officer (CCO) after successfully completing one year of supervision.



| | |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/11/20 | 6 of 12 | **DOC 450.300** |

**POLICY**

| TITLE |
|---|
| **VISITS FOR INCARCERATED INDIVIDUALS** |

       2.    Persons on unsupervised probation/deferrals may be considered for visit privileges 2 years from the date of sentencing with permission from the court.

       3.    Persons who only owe Legal Financial Obligations are not subject to these requirements.

  C.    Persons with misdemeanor convictions are not eligible to apply for visiting privileges for 6 months after expiration of sentence.

       1.    Immediate family members with proof of relationship, may be considered after 3 months from the date of closure or with written permission from his/her CCO, Parole Officer, or the court after successfully completing one year of supervision.

       2.    Persons who only owe Legal Financial Obligations are not subject to this requirement.

IV.    Special Visits

  A.    Special visits may be permitted for:

       1.    Visitors who travel a long distance (i.e., at least 250 miles one way) or from out of the country.

       2.    Individuals who use special transportation services facilitated and contracted by the Department.

       3.    Appointed members of local and/or statewide family councils who have missed visits due to participation in council meetings.

       4.    Incarcerated individuals who are in restrictive housing or hospitalized.

  B.    Special visits will only be approved for persons on the incarcerated individual's approved visitor list unless approved by the Superintendent/designee for extraordinary circumstances.

  C.    Special visits must be requested on DOC 21-787 Special Visit Request and submitted to facility visit employees as soon as possible, but no less than 5 business days before the requested date.

       1.    All visitors who wish to participate in the special visit must be listed on the form.

       2.    Visit employees will process requests before the requested visit date.



| | |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON**<br>OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/11/20 | 7 of 12 | **DOC 450.300** |

| **POLICY** | **TITLE**<br>**VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

D.   The Superintendent/designee will coordinate adjustments to established times and days for individuals on the approved visitor list to accommodate special requests.

V.   Approval Process

A.   Each prospective visitor must apply for visiting privileges.

1.   Prospective visitors will complete one of the following applicable electronic applications at doc.wa.gov:

a.   DOC 20-060 Visitor Application for adult visitors
b.   DOC 20-181 Minor Visitor Application for minor visitors

1)   A completed and notarized copy of DOC 20-441 Parent/ Guardian Consent for Minor Visit and/or Escort must be attached to the visit application for a minor(s).

2.   Providing false/misleading information or failure to list all previous criminal history on the visit application may result in denial of visiting privileges.

B.   Applications will be processed within 30 days of receipt.

C.   National Crime Information Center (NCIC), Washington State Crime Information Center (WACIC), and District and Municipal Court Information Center (DISCIS) background checks will be conducted, and the incarcerated individual's electronic file will be reviewed to verify the applicant's identity and ensure the accuracy of the visitor's application.

1.   Subsequent background checks may be run on a periodic basis.

VI.   Approved Visitor List

A.   There is no limit to the number of visitors an individual may have on his/her approved visitor list.

B.   Visitors may only be on one approved visitor list unless they are immediate family members of more than one incarcerated individual and approved by the Statewide Visit Specialist.

1.   A visit application will need to be submitted by the family member and approved for each incarcerated individual.

2.   A Headquarters Visit Unit employee will complete DOC 20-438 Approval for Visits with Multiple Incarcerated Individuals and submit it to the



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE** 6/11/20 | **PAGE NUMBER** 8 of 12 | **NUMBER** DOC 450.300 |
| **POLICY** | **TITLE** VISITS FOR INCARCERATED INDIVIDUALS | | |

Statewide Visit Specialist.  Visitors will be notified via email regarding status.

    3.    If a child with incarcerated parents participates in visiting with both parents, an exception may be allowed for the adult accompanying the child as an escort.

C.    When an individual is transferred to another facility, his/her approved visitor list will remain active and be available in the statewide visit system.

    1.    Incarcerated individuals will be responsible for notifying their visitors of transfers.

    2.    The receiving facility may conduct a review of each individual listed for updated law enforcement and intelligence data.

    3.    When the receiving Superintendent believes visiting should be denied, the matter will be referred to the appropriate Deputy Director/designee for a final decision.

D.    Individuals will use the kiosk to view their approved visitor list.

    1.    For facilities without a kiosk, the Superintendent will establish a process to notify individuals regarding their approved visitor list.

E.    Visitor lists will be closed out and no longer valid when an individual is released from confinement, passes away, or is on escape status.  If an individual is re-incarcerated, all visitors must go through the approval process to create a new visitor list.

F.    Applicants denied placement on an approved visitor list will be informed, in writing, of the reasons for denial.

    1.    When all avenues of appeal have been exhausted and the denial is being upheld, the applicant must wait 12 months after the date of the last action before reapplying for visit privileges.

VII.    Removal of Names from the Approved Visitor List

A.    An individual may remove a visitor from his/her approved visitor list by sending a written request to the Headquarters Visit Unit at PO Box 41118, Olympia, WA 98504-1118 or via kiosk.

B.    A visitor who wishes to be removed from a visitor list must send a request via email or by writing to the Headquarters Visit Unit.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 6/11/20 | PAGE NUMBER 9 of 12 | NUMBER **DOC 450.300** |
| **POLICY** | TITLE **VISITS FOR INCARCERATED INDIVIDUALS** | | |

C.   If a visitor is removed from an approved visitor list, s/he must wait 90 days before being added to any visit list.

    1.   The waiting period may be waived if the visitor has not used his/her visiting privileges within the last 90 days.

D.   Minors may be removed from a visit list if any legal parental authority requests it in writing to the Headquarters Visit Unit and attaches proof of authority (e.g., parenting plan, court documents).

VIII.   Visit Processes

A.   Visitors and incarcerated individuals will be treated courteously.  Rule enforcement will be polite and professional.

B.   Copies of the Visitor Guidelines (Attachment 2) will be available to all incarcerated individuals and visitors at the facility and at doc.wa.gov.  Information will also be provided concerning transportation to the facility.

    1.   Each facility will identify processes specific to their location in Attachment 2 to include:

        a.   Hours and days for personal visits, including appropriate arrival times.

        b.   The maximum number of visitors each individual is allowed during visiting hours and the length of visits, which may be limited only by facility schedule, space, and personnel constraints, or when there are substantial reasons to justify the limitations.

        c.   Check in/out process for visitors.

    2.   Requests for exceptions to the Visitor Guidelines (Attachment 2) will be submitted to the appropriate Deputy Director for approval.

C.   All visitors and service dogs are subject to pat, electronic, and canine searches. Lockers used by visitors, as well as visitors' vehicles, purses, packages, briefcases, or similar containers which are brought onto facility grounds may be searched per DOC 420.340 Searching and Detaining Facility Visitors.

    1.   All visitors should read DOC 420.340 Searching and Detaining Facility Visitors and are required to sign DOC 21-575 Acknowledgment of Visitor Search Requirements before the first visit with an incarcerated individual.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 6/11/20 | PAGE NUMBER 10 of 12 | NUMBER **DOC 450.300** |
| **POLICY** | TITLE **VISITS FOR INCARCERATED INDIVIDUALS** | | |

D.  In addition to brief, appropriate contact at the beginning of each visit, an incarcerated individual may have physical contact with his/her child(ren) 8 years of age and under.

 1.  The Superintendent may impose additional requirements that limit physical contact for a specific individual visitor.

E.  Visitors with minors are responsible for ensuring the minors they escort are accompanied and supervised during the entire visit.

F.  Visitors and incarcerated individuals will only bring limited items into the facility visit room and should dress appropriately per Attachment 2.

IX.  Denial, Suspension, or Termination of Visits

A.  While the Department intends to actively engage families in support of those under its jurisdiction, visiting may be denied, suspended, terminated, or restricted as a sanction for a guilty finding of visit-related infractions, violent offenses, or drug-related behavior that presents a security or safety threat.

 1.  Sanctions will be imposed per DOC 460.050 Disciplinary Sanctions and will be shared with affected family members.

B.  Persons involved in attempting/conspiring to introduce, or aiding and abetting another to introduce contraband will have their visit privileges suspended or permanently terminated.

 1.  A visitor found in possession of dangerous contraband may be detained and/or searched per DOC 420.340 Searching and Detaining Facility Visitors and will have their visit privileges permanently terminated.

 2.  A visitor found in possession of items that are legal, but considered contraband in Prisons will have their visiting privileges suspended for 6 months.  Subsequent violations will result in permanent termination of visiting privileges.

C.  The Superintendent may suspend/terminate visiting privileges with a specified individual(s) as the result of a very serious violation or multiple violations.

D.  The Superintendent or designee at the rank of Shift Commander or higher may deny entrance to visitors or terminate a visit in progress if:

 1.  There is prior knowledge leading to evidence that a visitor is attempting to smuggle contraband in or out of the facility.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON**<br>OFFENDER/SPANISH MANUALS |

| | REVISION DATE<br>6/11/20 | PAGE NUMBER<br>11 of 12 | NUMBER<br>**DOC 450.300** |
|---|---|---|---|

| **POLICY** | TITLE<br>**VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

      a.    Local law enforcement will be contacted and allowed to handle visitor search procedures if there is sufficient information and time to coordinate efforts.

    2.    There is a disturbance or emergency situation within the facility.

    3.    There is clear and present or imminent danger to the health or safety of anyone.

    4.    There is reasonable suspicion to believe that criminal conduct will result if entrance is allowed.

    5.    The visitor appears to be under the influence of alcohol or drugs.

    6.    The individual or visitor fails to abide by Department policies or the facility's rules or procedures.

E.    The Superintendent may suspend or terminate the visiting privileges of a visitor for a serious/repeated violation of this policy or serious/repeated abuse of visit privileges on the part of the visitor or incarcerated individual.

    1.    The Superintendent/designee may prolong a suspension if there remains a clear and present or imminent danger to the health or safety of anyone or risk to facility security.

F.    DOC 20-454 Visitor's Notice of Suspension/Termination will be sent to the visitor within 10 days identifying the specific reason(s) for a suspension or termination.

    1.    The incarcerated individual may request the reason for the suspension, denial, or termination from the visitor.

X.    No Contact Provisions

A.    The Superintendent will establish procedures for no contact visiting in cases of substantiated security risk.

B.    The Superintendent may impose no contact visit provisions for inappropriate or security threat-related behavior displayed by the incarcerated individual and/or visitor.

XI.    Appeals for Visiting Privileges

A.    A visitor may appeal an initial visit application denial in writing to the Assistant Secretary for Prisons/Headquarters Correctional Program Administrator.  A



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 6/11/20 | PAGE NUMBER 12 of 12 | NUMBER **DOC 450.300** |
| **POLICY** | TITLE **VISITS FOR INCARCERATED INDIVIDUALS** | | |

written decision will be mailed through the USPS when email is not an option for notification to the visitor.

B.   Visitors may appeal visiting privilege restrictions/suspension/termination by writing to the facility's Superintendent, stating the circumstances and why visiting privileges should be restored.  If the Superintendent upholds the decision, the visitor may appeal the Superintendent's decision to the Assistant Secretary for Prisons, who has final authority on visiting privilege appeals.

XII.   Documentation

A.   All visit-related documentation will be scanned into the incarcerated individual's electronic imaging file.

B.   The Statewide Visit Specialist will assist with document verification and processing, as necessary.

**DEFINITIONS:**

The following words/terms are important to this policy and are defined in the glossary section of the Policy Manual:  Dangerous Contraband, Immediate Family.  Other words/terms appearing in this policy may also be defined in the glossary.

**ATTACHMENTS:**

Video Visiting (Attachment 1)
Visitor Guidelines (Attachment 2)

**DOC FORMS:**

DOC 20-060 Visitor Application for adult visitors
DOC 20-181 Minor Visitor Application for minor visitors
DOC 20-182 Government Designated Escort Application
DOC 20-438 Approval for Visits with Multiple Incarcerated Individuals
DOC 20-441 Parental/Guardian Consent for Minor Visit and/or Escort
DOC 20-450 Approval for Visits by Current/Former Employee, Contract Staff, or Volunteer
DOC 20-454 Visitor's Notice of Suspension/Termination
DOC 21-575 Acknowledgment of Visitor Search Requirements
DOC 21-787 Special Visit Request

# EXHIBIT  6



| | APPLICABILITY **PRISON/REENTRY** FACILITY/SPANISH MANUALS | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **REVISION DATE** 11/30/21 | **PAGE NUMBER** 1 of 13 | **NUMBER** **DOC 450.300** |
| **POLICY** | **TITLE** **VISITS FOR INCARCERATED INDIVIDUALS** | | |

**REVIEW/REVISION HISTORY:**

Effective:   1/7/00
Revised:     2/20/03
Revised:     11/15/06
Revised:     4/18/07 AB 07-012
Revised:     2/20/09
Revised:     2/1/10
Revised:     2/4/11
Revised:     6/1/13
Revised:     2/2/15
Revised:     11/21/15
Revised:     9/1/16
Revised:     5/29/18
Revised:     7/11/18
Revised:     5/7/19
Revised:     6/11/20
Revised:     11/30/21

**SUMMARY OF REVISION/REVIEW:**

Major changes to include moving information to new in-person and video visit guidelines posted on the external website and incorporating applicability to Reentry Centers.  Read carefully!

**APPROVED:**

Signature on file

_____
**CHERYL STRANGE**, Secretary
Department of Corrections

11/1/21
_____
Date Signed

Exhibit 6



| | APPLICABILITY **PRISON/REENTRY** FACILITY/SPANISH MANUALS | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | REVISION DATE 11/30/21 | PAGE NUMBER 2 of 13 | NUMBER **DOC 450.300** |
| **POLICY** | TITLE **VISITS FOR INCARCERATED INDIVIDUALS** | | |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; RCW 9.94.043; RCW 9.94.045; WAC 137-28; DOC 100.560 Non-Discrimination and Accessibility for Visitors/Guests with Disabilities; DOC 150.150 Visits and Tours of Department Facilities and Offices; DOC 320.255 Restrictive Housing; DOC 390.300 Victim Services Program; DOC 420.340 Searching and Detaining Facility Visitors; DOC 460.050 Disciplinary Sanctions; DOC 460.135 Disciplinary Procedures for Work Release; DOC 530.100 Volunteer Program; DOC 590.100 Extended Family Visiting; DOC 850.030 Relationships/Contacts with Individuals; Facility-Specific Visit Guidelines; Video Visit Expectations; Visitor Guidelines for Reentry Centers

**POLICY:**

I.      The Department recognizes the vital role family and friends play in providing meaningful connection during confinement and throughout the reentry process.  The Department will support incarcerated individuals in maintaining prosocial ties with family, friends, and the community by engaging them and setting reasonable criteria for personal visits.

      A.      Visitors are encouraged to provide feedback to enhance the visit experience. Any form of retaliation toward those who provide feedback will not be tolerated.

II.     The Department prohibits discrimination or unfair/illegal treatment on the basis of genetic information (e.g., national origin, ancestry, race, color), religion/creed, age, gender, gender expression, marital status or status as a state registered domestic partner, pregnancy, sexual orientation, or political views, immigration/citizenship status, veteran/military status, or the presence or history of a physical/mental/sensory disability in any activity or its operations.

III.    Additional extended family visit opportunities are available per DOC 590.100 Extended Family Visiting.

**DIRECTIVE:**

I.      General Requirements

      A.      Visitors and incarcerated individuals will be treated courteously.  Rule enforcement will be polite and professional.

      B.      Eligible visitors must be approved per the approval process and added to the incarcerated individual's approved visit list before being allowed to visit.

            1.      Eligibility requirements are identified in Eligibility Requirements for Visitors (Attachment 1).

72



| | | |
|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY** **PRISON/REENTRY** FACILITY/SPANISH MANUALS | |

| **REVISION DATE** 11/30/21 | **PAGE NUMBER** 3 of 13 | **NUMBER** **DOC 450.300** |
|---|---|---|

| **POLICY** | **TITLE** **VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

2.    The Superintendent/Reentry Center Community Corrections Supervisor (CCS) or their designee may make one-time allowances for visitors not approved through the Statewide Visit Unit under special circumstances.

C.    Visitation opportunities in Prisons will be provided for in-person, video, and/or no contact options appropriate for various circumstances based on eligibility and safety for those participating.

1.    Individuals housed in maximum custody may receive visits per DOC 320.255 Restrictive Housing.

2.    Video visit opportunities may be authorized in Prisons using the vendor contracted to provide the service at the visitor's expense.  Video visits will be conducted per Video Visit Expectations posted to the Department's public website.

D.    Visit opportunities in Reentry Centers will be provided for in-person, based on eligibility and safety in any activity or its operations.

E.    Facilities will provide in-person visit opportunities and programs in a secure and welcoming visit space for incarcerated individuals and their family and friends to provide as normal a family experience as possible through:

1.    Reasonable efforts made to ensure the visit area is comfortable, pleasant, and permits informal communication and limited, appropriate physical contact.

2.    Providing sufficient and safe space for in-person visits and, if necessary, no contact visits consistent with custody level.  Visit areas will be designed taking the following into consideration:

a.    Designated visit areas will include a section that has a child-friendly environment with toys and games suitable for interaction by family members of all ages.

b.    Reasonable accommodation will be provided for visitors with disabilities per DOC 100.560 Non-Discrimination and Accessibility for Visitors/Guests with Disabilities.

c.    Appropriate seating for all ages will be provided.

d.    In Prisons, space is adequately designed to allow for appropriate space that permits screening and searching of both incarcerated individuals and visitors.



| | STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON/REENTRY**<br>FACILITY/SPANISH MANUALS | | |
|---|---|---|---|---|
| | | **REVISION DATE**<br>11/30/21 | **PAGE NUMBER**<br>4 of 13 | **NUMBER**<br>**DOC 450.300** |
| **POLICY** | | **TITLE**<br>**VISITS FOR INCARCERATED INDIVIDUALS** | | |

     e.    Space may be provided for the proper storage of visitors' coats, handbags, and other personal items not allowed into the visit area.

   3.   Ensuring employees are aware of the importance of positive visit environments to maintain ties with family and friends, and the reunification of individuals with their families and significant others.

F.   The Statewide Visit Unit will ensure:

   1.   All visitor information is entered in the statewide visit system, including visit application information and identified areas of concern.

   2.   Application status (i.e., pending, approved, denied, rejected) is updated as soon as possible and emailed to the applicant or sent through the United States Postal Service (USPS) when email is not an option.

   3.   When available, a picture of each visitor is added to the visitor profile.

G.   Each Superintendent/CCS will establish a local process to ensure the following information is entered into the statewide visit system:

   1.   Documentation of each visit, to include any positive or negative observations or issues addressed during the visit.

      a.    Visitors will be provided notice of any negative entries that address corrective action or conversations with employees/contract staff.

   2.   When an official photo is not yet in the system, a picture of each visitor will be taken at the first visit and updated when the visitor's appearance changes or every 2 years for minors.

   3.   The Statewide Visit Specialist, Communications Director, and DOC Webmaster will be notified when visit room closures are planned or occur unexpectedly at a Prison to allow for internal and external stakeholder notifications to be posted.

H.   All visitors are expected to adhere to Department policies, including attachments and guidelines.

I.   If an individual's Judgment and Sentence allows for visitation, visits may be considered but are not guaranteed.

J.   All visit-related documentation will be scanned into the incarcerated individual's electronic imaging file.



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON/REENTRY**<br>FACILITY/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE**<br>11/30/21 | **PAGE NUMBER**<br>5 of 13 | **NUMBER**<br>**DOC 450.300** |
| **POLICY** | **TITLE**<br>**VISITS FOR INCARCERATED INDIVIDUALS** | | |

K.   More information can be found on the Family & Visitors section of the Department's external website.

II.   Special Visits

    A.   Special visits will only be approved for persons on the incarcerated individual's approved visit list unless approved by the Appointing Authority/CCS or designee for extraordinary circumstances.

        1.   Special visits may be limited due to operational, safety, and/or security concerns.

    B.   In Prisons, special visits must be requested on DOC 21-787 Special Visit Request and submitted to facility visit employees as soon as possible, but no less than 5 business days before the requested date.

        1.   All visitors who wish to participate in the special visit must be listed on the form.

        2.   Facility visit employees will process requests before the requested visit date.

    C.   Special visits may be permitted for:

        1.   Visitors who travel a long distance (i.e., at least 250 miles one way) or from out of the country.

        2.   Elected/appointed members of local and/or statewide family councils who have missed visits due to participation in council meetings.

        3.   Incarcerated individuals who are in restrictive housing or hospitalized.

    D.   The Superintendent/CCS or their designee will coordinate adjustments to established times and days for individuals on the approved visit list to accommodate special requests.

III.   Approval Process

    A.   Each Prison/Reentry Center prospective visitor must apply for visit privileges, regardless of age.

        1.   Prospective visitors will complete one of the following applicable electronic applications on the Department's external website at doc.wa.gov:



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/REENTRY** FACILITY/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE** 11/30/21 | **PAGE NUMBER** 6 of 13 | **NUMBER** **DOC 450.300** |
| **POLICY** | **TITLE** **VISITS FOR INCARCERATED INDIVIDUALS** | | |

    a. DOC 20-060 Visitor Application for adult visitors

    b. DOC 20-181 Minor Visitor Application for minor visitors

        1) A completed DOC 20-441 Parent/Guardian Consent for Minor Visit and/or Escort must be attached to the visit application for a minor(s).

  2. Providing false/misleading information or failure to list all previous criminal history on the visit application may result in denial of visit privileges.

  3. International visitors must:

    a. Provide a copy of their passport photo page, and

    b. Request a copy of their criminal history from their local jurisdiction be forwarded to the Statewide Visit Unit.

        1) The Statewide Visit Unit must receive the criminal history from the local jurisdiction before visit privileges will be considered.

B. Applications should be processed within 30 business days of receipt but may be delayed due to a high volume of applications or when an application requires further review from the Visit Multi-Disciplinary Team (VMDT), or other additional review.

  1. To ensure timelines are met, inquiries regarding the status of a visit application will only receive a response when the application has been in process for more than 8 weeks.

C. Criminal history background checks will be conducted, and the incarcerated individual's electronic file will be reviewed to verify the applicant's identity and ensure the accuracy of the visitor's application.

  1. Subsequent background checks will be conducted on a periodic basis.

IV. Visit Multidisciplinary Team

A. The VMDT has been established and will meet monthly to review:

  1. Eligibility when an application is submitted:

    a. For a minor(s) to visit an individual who has a current or prior adjudicated offense against a minor (e.g., sexual/violent offense against a minor).



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/REENTRY** FACILITY/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 11/30/21 | PAGE NUMBER 7 of 13 | NUMBER **DOC 450.300** |
| **POLICY** | TITLE **VISITS FOR INCARCERATED INDIVIDUALS** | | |

        1)     If the Judgment and Sentence states no contact with minors, the application will be denied by processing employees.

        2)     When the court authorizes visits, the Department may still deny visits on a case-by-case basis after conducting a full review of available information.

    b.     For a minor and escorting adult, where the adult has other children that have been victimized by the individual they want to visit.

  2.     Current visitor eligibility when the facility requests assistance in determining suitability.

B.     The VMDT will be chaired by the Statewide Visit Specialist and consist of at least one representative from the following, as applicable:

  1.     Victim Services
  2.     Sex Offender Treatment Program
  3.     Department of Children, Youth, and Families
  4.     Community Corrections Division
  5.     Indeterminate Sentence Review Board
  6.     Law Enforcement Notification
  7.     Reentry Center

C.     Additional documentation may be required from the applicant and/or incarcerated individual for VMDT review (e.g., parenting plan, custody documents, releases).

V.     Approved Visit List

A.     There is no limit to the number of visitors an individual may have on the approved visit list.

B.     Visitors may only be on one approved visit list unless they are immediate family members of more than one incarcerated individual and approved by the Statewide Visit Specialist.

  1.     A visit application must be submitted by the family member for each incarcerated individual.

  2.     A Statewide Visit Unit employee will complete DOC 20-438 Approval for Visits with Multiple Incarcerated Individuals and submit it to the Statewide Visit Specialist for consideration.  Visitors will be notified via email regarding status.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON/REENTRY**<br>FACILITY/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 11/30/21 | 8 of 13 | **DOC 450.300** |

| **POLICY** | TITLE<br>**VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

3.    If a child with incarcerated parents participates in visiting with both parents, an exception may be allowed for the adult accompanying the child as an escort.

C.    When an individual is transferred to another facility, the approved visit list will remain active and be available in the statewide visit system.

    1.    Incarcerated individuals will be responsible for notifying their visitors of transfers.

    2.    The receiving facility may conduct a review of each individual listed for updated law enforcement and intelligence data.

    3.    When the receiving Superintendent/CCS believes visits should be denied, the matter will be referred to the appropriate Deputy Assistant Secretary, Reentry Center Operations Administrator, or their designee for a final decision.

D.    Individuals may use the kiosk or request a printed list from an employee to view their approved visit list.

E.    Visit lists will be closed out and no longer valid when an individual is released from confinement, passes away, or is on escape status.  If an individual is re-incarcerated, all visitors must go through the approval process to create a new visit list.

F.    Applicants denied placement on an approved visit list will be informed, in writing, of the reasons for denial.

    1.    Individuals must receive the details of a denial from the visitor.

VI.    Removal of Names from the Approved Visit List

A.    An individual may remove a visitor from the approved visit list by sending a written request to the Statewide Visit Unit at PO Box 41118, Olympia, WA 98504-1118 or via kiosk.

    1.    Removal requests received by facility employees will be forwarded to the Statewide Visit Unit.

    2.    If a visitor is removed from a visit list and submits a new application, the Statewide Visit Unit will send a kiosk message to the individual asking if the individual wants the application to be processed.  The individual must verify in writing for the application to be proceed.



| | |
|---|---|
| **STATE OF WASHINGTON**<br>**DEPARTMENT OF CORRECTIONS** | **APPLICABILITY**<br>**PRISON/REENTRY**<br>FACILITY/SPANISH MANUALS |

| **REVISION DATE**<br>11/30/21 | **PAGE NUMBER**<br>9 of 13 | **NUMBER**<br>**DOC 450.300** |
|---|---|---|

| **POLICY** | **TITLE**<br>**VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

B.   Visitors are encouraged to request removal from a visit list if they no longer want to participate in visits.

C.   A visitor who wishes to be removed from a visit list must send a request via email or by writing to the Statewide Visit Unit.

D.   If a visitor is removed from an approved visit list, the visitor must wait 90 days before being added to the same or any other visit list.

    1.   The waiting period may be waived when the visitor has not visited in person within the last 90 days.

E.   Minors may be removed from a visit list if any legal parental authority requests it in writing to the Statewide Visit Unit and attaches proof of authority (e.g., parenting plan, court documents).

F.   Visitors will be removed from the visit list if they have not visited in person or via a video visit in the last 5 years or are deceased.

VII.   Visit Processes

A.   Visit personnel will document visitor observations, as appropriate, in the statewide electronic visit system.

    1.   Visitors will be provided notice of any negative entries that address corrective action or conversations with employees/contract staff.

B.   Copies of the Visitor Guidelines will be available to incarcerated individuals at the facility and visitors may access them on the Department's external website.

    1.   The Correctional Program Administrator/designee will provide the guidelines to Prisons to incorporate processes specific to their location.

        a.   Each Prison will send their guidelines to be reviewed and approved by the Correctional Program Administrator/designee each time they are updated before posting to their facility's web page on the Department's external website.

    2.   Requests for exceptions to the visitor guidelines will be submitted to the Senior Director for Correctional Operations, who will submit requests to the appropriate Assistant Secretary for final approval.

C.   All visitors and service dogs are subject to pat, electronic, and canine searches. Lockers used by visitors, as well as visitors' vehicles, purses, packages,



| | |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON/REENTRY**<br>FACILITY/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 11/30/21 | 10 of 13 | **DOC 450.300** |

| **POLICY** | **TITLE**<br>**VISITS FOR INCARCERATED INDIVIDUALS** |
|---|---|

briefcases, or similar containers which are brought onto facility grounds may be searched.

1. All Prison visitors should read DOC 420.340 Searching and Detaining Facility Visitors and are required to sign DOC 21-575 Acknowledgment of Visitor Search Requirements before the first visit with an incarcerated individual.

D. In addition to brief, appropriate contact at the beginning of each visit, an incarcerated individual may have physical contact with the individual's child(ren) 8 years of age and under.

1. The Superintendent/CCS may impose additional requirements that limit physical contact for a specific visitor.

2. Depending on circumstances (e.g., pandemic), physical contact may not be allowed.

E. Visitors with minors are responsible for ensuring the minors are accompanied and supervised during the entire visit.

VIII. Denial, Suspension, or Termination of Visits

A. While the Department intends to actively engage families in support of those under its jurisdiction, visit privileges may be denied, suspended, terminated, or restricted as a sanction for a guilty finding of visit-related infractions, violent offenses, or drug-related behavior that presents a security or safety threat.

1. Sanctions will be imposed per DOC 460.050 Disciplinary Sanctions or DOC 460.135 Disciplinary Procedures for Work Release and will be shared with affected family members.

a. Individuals sanctioned to a loss of visits will have a restriction placed in the statewide visit system documenting a start and end date and what type of visits are suspended.

1) If the associated infraction is dropped or reduced, the visit suspension for a visitor may remain in place, as appropriate.

2. An individual's sanction and visitor's suspension may vary in duration and the type of visitation privilege(s) loss will be related to the violation behavior (e.g., introduction of contraband during in-person visit, sexually suggestive during a video visit).



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON/REENTRY** FACILITY/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE** 11/30/21 | **PAGE NUMBER** 11 of 13 | **NUMBER** DOC 450.300 |
| **POLICY** | **TITLE** **VISITS FOR INCARCERATED INDIVIDUALS** | | |

B.    Persons identified as being involved in attempting/conspiring to introduce, or aiding and abetting another to introduce contraband, in any way, will have their visit privileges suspended or terminated.

    1.    In Prisons, a visitor found in possession of:

        a.    Dangerous contraband may be detained and/or searched per DOC 420.340 Searching and Detaining Facility Visitors and will have their visit privileges terminated.

        b.    Items that are legal but considered contraband in Prisons may have their visit privileges suspended for 6 months. Subsequent violations will result in termination of visit privileges.

    2.    In Reentry Centers, visitors will be asked to leave the facility and law enforcement may be called, if appropriate.

C.    The Superintendent/CCS may suspend/terminate visit privileges with a specified individual(s) as the result of a very serious violation or multiple violations.

D.    The Superintendent or designee at the rank of Shift Commander or higher in Prisons and employees/contract staff in Reentry Centers may deny entrance to visitors or terminate a visit in progress if:

    1.    There is prior knowledge leading to evidence that a visitor is attempting to smuggle contraband in or out of the facility.

        a.    Local law enforcement will be contacted and allowed to handle visitor search procedures if there is sufficient information and time to coordinate efforts.

    2.    There is a disturbance or emergency within the facility.

    3.    There is clear and present or imminent danger to the health or safety of anyone.

    4.    There is reasonable suspicion to believe that criminal conduct will result if entrance is allowed.

    5.    The visitor appears to be under the influence of alcohol or drugs.

        a.    Facility employees/contract staff will notify local law enforcement per local procedures.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/REENTRY** FACILITY/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 11/30/21 | 12 of 13 | **DOC 450.300** |

| **POLICY** | TITLE |
|---|---|
| | **VISITS FOR INCARCERATED INDIVIDUALS** |

6.   The individual or visitor fails to abide by Department policies or the facility's rules or procedures.

7.   A minor being escorted by an adult is not supervised or is causing disruptions to a visit.

E.   The Superintendent/CCS may suspend or terminate the visit privileges of a visitor for a serious/repeated violation of this policy or serious/repeated abuse of visit privileges on the part of the visitor or incarcerated individual.

1.   The Superintendent/CCS or their designee may prolong a suspension if there remains a clear and present or imminent danger to the health or safety of anyone or risk to facility security.

F.   DOC 20-454 Visitor's Notice of Suspension/Termination will be sent to the visitor within 10 days identifying the specific reason(s) for a suspension or termination.

1.   The incarcerated individual must request the reason for the suspension or termination from the visitor.

IX.   No Contact Provisions in Prisons

A.   The Superintendent will establish procedures for no contact visits in cases of substantiated security risk.

B.   The Superintendent may impose no contact visit provisions for inappropriate or security threat-related behavior displayed by the incarcerated individual and/or visitor.

X.   Appeals

A.   A visitor may appeal an initial visit application, denial visit privilege restrictions/ suspensions/terminations, and/or VMDT decisions in writing to the Headquarters Correctional Program Administrator.  A written decision will be mailed through the USPS when email is not an option for notification to the visitor.

1.   The appropriate Assistant Secretary or their designee has final authority on visit privilege appeals.

2.   Visitors who receive notification that their opportunities for appeal have been exhausted may resubmit an application after one year to be considered for restoration of modified or full visit privileges.

**DEFINITIONS:**



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON/REENTRY**<br>FACILITY/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>11/30/21 | PAGE NUMBER<br>13 of 13 | NUMBER<br>**DOC 450.300** |
| **POLICY** | TITLE<br>**VISITS FOR INCARCERATED INDIVIDUALS** | | |

The following words/terms are important to this policy and are defined in the glossary section of the Policy Manual:  Dangerous Contraband, Immediate Family.  Other words/terms appearing in this policy may also be defined in the glossary.

**ATTACHMENTS:**

Eligibility Requirements for Visitors (Attachment 1)

**DOC FORMS:**

DOC 20-060 Visitor Application for adult visitors
DOC 20-181 Minor Visitor Application for minor visitors
DOC 20-182 Government Designated Escort Application
DOC 20-438 Approval for Visits with Multiple Incarcerated Individuals
DOC 20-441 Parental/Guardian Consent for Minor Visit and/or Escort
DOC 20-450 Approval for Visits by Current/Former Employee, Contract Staff, or Volunteer
DOC 20-454 Visitor's Notice of Suspension/Termination
DOC 21-575 Acknowledgment of Visitor Search Requirements
DOC 21-787 Special Visit Request

# EXHIBIT  7

# ELIGIBILITY REQUIREMENTS FOR VISITORS

## Eligible Visitors

Professional visitors must be credentialed, licensed, and working in a professional capacity (e.g., clergy, attorney, social worker not escorting a minor, tribal/other government officials).

1.    Except for members of the media (e.g., bloggers, authors, reporters) and professional visitors hired to supervise minors, professional visitors are not required to be on the approved visit list and will request visits per DOC 150.150 Visits and Tours of Department Facilities and Offices.

   •    Members of the media and hired professional visit supervisors must be approved for visit privileges through the regular application process.

2.    Proof of valid certification/licensure and other applicable documentation must be provided upon request or visit privileges may be denied.

Approved minors (i.e., under 18 years of age and not legally emancipated) may participate in visiting an incarcerated individual when escorted by someone on that individual's approved visit list, who is:

1.    A designated adult escort (e.g., an approved non-incarcerated parent/legal guardian, approved government designated escort,) listed on DOC 20-441 Parent/Guardian Consent for Minor Visit and/or Escort.

   •    This form must be submitted before the date of the visit to the Statewide Visit Unit at dochqvisitunit@doc.wa.gov.

   •    A government-designated escort (e.g., guardian ad litem, court-appointed special advocate, government caseworker/visit supervisor), who has submitted DOC 20-182 Government Designated Escort Application to escort an approved minor. The Statewide Visit Unit will verify the authenticity of the applicant.

   •    Escorts approved as part of a contract (e.g., Girl Scouts Beyond Bars) may escort children on an individual's visit list per the contract.

      •    Escorts do not have to be on the individual's visit list for the child to be added to an individual's visit list.

Current and former Department employees, contract staff, and volunteers who are immediate family may be considered for visit privileges.

1.    Current Department employees, contract staff, and volunteers who are not immediate family are not eligible to visit incarcerated individuals.

   •    Employees/contract staff/volunteers may participate in a program or special event as a guest if approved by the Superintendent/Reentry Center Community Corrections Supervisor (CCS).

2.    Immediate family must provide documentation reflecting the relationship with the individual they want to visit.

Exhibit 7

3.  A Statewide Visit Unit employee will verify the relationship and complete DOC 20-450 Approval for Visits by Current/Former Employee, Contract Staff, or Volunteer and send it to:

    •   The Statewide Visit Specialist if there are no known Prison Rape Elimination Act (PREA) concerns, or

    •   The appropriate Assistant Secretary for consideration when PREA concerns have been identified.

4.  Volunteers cannot volunteer and be on the visit list of an individual at the same facility per DOC 530.100 Volunteer Program.

    •   Volunteers must gain written approval in advance from the Superintendent/CCS and Community Partnership Program Coordinator (CPPC), when applicable, at the facility where they volunteer, and the Superintendent/CCS at the facility where the individual is housed.

5.  If a visitor is employed or volunteers for the Department after being approved to visit, the employee/contract staff/volunteer must submit appropriate documentation and be authorized to visit per to DOC 850.030 Relationships/Contacts with Individuals.

6.  Former Department employees, contract staff, and volunteers who are not immediate family may request visiting privileges after one year has elapsed from the last date of employment/work/volunteering for the Department.

**Ineligible Visitors**

The following are ineligible to visit incarcerated individuals:

1.  A victim of the incarcerated individual's current offense(s) or any previous adjudicated offense.

    •   Exceptions may be granted for immediate family members by the appropriate Assistant Secretary.

    •   A minor may be denied due to the nature of a crime of conviction if the minor is profiled as comparable to that of a victim.

    •   Victims may participate in a one-time visit per DOC 390.300 Victim Services Program.

2.  Persons involved with the incarcerated individual in the commission of the offense for which the individual is incarcerated when the visitor has been charged and found guilty of an associated crime.

    •   Exceptions may be granted by appropriate Assistant Secretary or their designee for immediate family members with official documentation of the relationship.

3.  Persons restricted per the Judgment and Sentence, including conditions of community supervision that prohibit contact with an individual or category of individuals.

- Although supervised visits may be allowed per the Judgment and Sentence, supervision by facility visit employees does not meet court requirements for supervision.

    1. A non-incarcerated parent/guardian may hire a professional visitor for supervision.

4. Persons who have any conviction(s) for introduction of contraband into a jail or prison setting.

5. Persons with pending/open charges.

Persons with felony convictions are not eligible to apply for visiting privileges for 2 years after expiration of the sentence, community supervision, or conditions of a deferred sentence. All court-imposed obligations must be fulfilled, and the case must be closed with the following exceptions:

1. Immediate family members with proof of relationship may be considered for visit privileges one year from the date of closure or with permission from their Community Corrections Officer (CCO) after successfully completing one year of supervision.

2. Persons on unsupervised probation/deferrals may be considered for visit privileges 2 years from the date of sentencing with permission.

3. Persons who only owe Legal Financial Obligations are not subject to these requirements.

Persons with misdemeanor convictions are not eligible to apply for visiting privileges for 6 months after expiration of sentence. All court-imposed obligations, except for fines, must be fulfilled and the case must be closed with the following exceptions:

1. Immediate family members with proof of relationship, may be considered after 3 months from the date of closure or with written permission from their CCO, Parole Officer, or the court after successfully completing one year of supervision.

2. Persons who only owe Legal Financial Obligations are not subject to this requirement.

Persons identified as being a safety/security concern, or who have facilitated/allowed an individual to violate Department or court-ordered conditions while in the community, may be denied all facility visit privileges.

**EXHIBIT 8**



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE**<br>8/13/20 | **PAGE NUMBER**<br>1 of 8 | **NUMBER**<br>**DOC 590.200** |
| **POLICY** | **TITLE**<br>**MARRIAGES AND STATE REGISTERED DOMESTIC PARTNERSHIPS** | | |

**REVIEW/REVISION HISTORY:**

| | |
|---|---|
| Effective: | 12/7/84 DOC 730.010 |
| Revised: | 10/1/85 |
| Revised: | 11/20/87 DOC 590.200 |
| Revised: | 4/11/03 |
| Revised: | 12/1/06 |
| Revised: | 3/20/08 |
| Revised: | 3/10/09 |
| Revised: | 1/18/11 |
| Revised: | 11/19/12 |
| Revised: | 3/15/13 |
| Revised: | 7/20/16 |
| Revised: | 7/27/17 |
| Revised: | 8/13/20 |

**SUMMARY OF REVISION/REVIEW:**

Major changes to include title, applicability, and updated terminology throughout.  Read carefully!

**APPROVED:**

Signature on file

_____
**STEPHEN SINCLAIR**, Secretary
Department of Corrections

7/13/20
_____
Date Signed



| | | APPLICABILITY | | |
|---|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS | | |
| | | REVISION DATE 8/13/20 | PAGE NUMBER 2 of 8 | NUMBER **DOC 590.200** |
| **POLICY** | | TITLE **MARRIAGES AND STATE REGISTERED DOMESTIC PARTNERSHIPS** | | |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; RCW 26.04; RCW 26.60; WAC 137-54-030; WAC 137-54-040; DOC 280.310 Information Technology Security; 450.300 Visits for Incarcerated Individuals; DOC 560.200 Religious Programs; DOC 590.100 Extended Family Visiting; DOC 700.100 Class III Work Programs

**POLICY:**

I.      The Department will provide a means for individuals to marry or enter into state registered domestic partnerships during their incarceration.  The Department neither approves nor disapproves of marriage or domestic partnership.

II.     Marriages must comply with RCW 26.04 and state registered domestic partnerships must comply with RCW 26.60.

III.    Applicants must adhere to policy requirements to be considered for programs and privileges offered for married individuals/state registered domestic partners.

**DIRECTIVE:**

I.      Requirements and Eligibility

A.      Individuals must be under Department jurisdiction for one year before beginning the marriage/state registered domestic partnership application process.

B.      Individuals in restrictive housing cannot initiate a marriage/domestic partnership application.

C.      Individuals who are boarders must have permission from the out-of-state department or the Regional Director of the Federal Bureau of Prisons.

D.      The intended spouse/domestic partner must be on the individual's approved visitor list per DOC 450.300 Visits for Incarcerated Individuals.

1.      If not on the approved visitor list, the intended spouse/domestic partner may submit a written exception request to the Assistant Secretary for Prisons.

2.      If the exception is granted, the marriage application will be forwarded for processing.



| | STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|---|
| | | REVISION DATE<br>8/13/20 | PAGE NUMBER<br>3 of 8 | NUMBER<br>**DOC 590.200** |
| **POLICY** | | TITLE<br>**MARRIAGES AND STATE REGISTERED DOMESTIC<br>PARTNERSHIPS** | | |

E.  Both the incarcerated individual and the intended spouse/domestic partner must be eligible to legally marry or enter into a state registered domestic partnership in Washington State.

F.  Eligibility for extended family visits will be determined per DOC 590.100 Extended Family Visiting.

   1.  Individuals who marry/enter into a state registered domestic partnership while in a Work/Training Release, and are returned to Prison, may apply for Extended Family Visiting after one year of the marriage/partnership.

II.  Application Process in Prisons

A.  The intended spouse/state registered domestic partner will complete and submit DOC 20-213 Marriage/State Registered Domestic Partnership Application for Intended Spouse/Domestic Partner Use to the assigned case manager with the following documents attached:

   1.  Copy of photo identification,
   2.  Certified copy of birth certificate, and
   3.  Certified copies of divorce/dissolution decrees for all prior marriages/state registered domestic partnerships, as applicable.

B.  The incarcerated individual will:

   1.  Complete DOC 20-214 Marriage/State Registered Domestic Partnership Application, attach the following, and submit them to the assigned case manager.

      a.  A certified copy of the individual's birth certificate, and
      b.  Certified copies of divorce/dissolution decrees for all prior marriages/state registered domestic partnerships, as applicable.

C.  The case manager will initiate DOC 20-443 Marriage/State Registered Domestic Partnership Process Checklist and process applications by reviewing submitted documents to determine eligibility for marriage/state registered domestic partnership.

   1.  Applications involving persons who were a victim of the incarcerated individual should be highly scrutinized and may be denied.

D.  The Facility Risk Management Team will meet to determine if the application process should continue.

91



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 8/13/20 | 4 of 8 | **DOC 590.200** |

| **POLICY** | TITLE<br>**MARRIAGES AND STATE REGISTERED DOMESTIC PARTNERSHIPS** |
|---|---|

    1.     If the application is denied, the Correctional Unit Supervisor (CUS) will notify the incarcerated individual and intended spouse/domestic partner, in writing, of the reason for denial (e.g., failure to meet eligibility requirements).

E.     If approved to proceed, the incarcerated individual must sign DOC 20-215 Marriage/State Registered Domestic Partnership Approval for Release of Information to allow the assigned case manager to provide written information to the intended spouse/domestic partner regarding the individual's criminal history, current offense, and sentence timeline.

F.     The case manager will provide the intended spouse/domestic partner an updated Criminal Conviction Record (CCR) and an official description of the incarcerated individual's current conviction.

G.     The intended spouse/domestic partner must sign DOC 20-215 Marriage/State Registered Domestic Partnership Approval for Release of Information indicating the intended has read and understands the information received and still wishes to marry or enter into a state registered domestic partnership.

H.     The CUS will send DOC 20-218 Marriage/State Registered Domestic Partnership Approval Routing and all related documents to the Superintendent/designee.

I.     Application processing may be suspended while an individual is in restrictive housing.

    1.     If the application process is suspended, a Chronological Event (chrono) will be entered in the individual's electronic file, and associated documents will be scanned into the individual's electronic imaging file. The original documents will be returned to the appropriate person.

        a.     Upon release, the individual may request for the application process to continue.

        b.     The individual does not have to resubmit documentation if it was already submitted.

III.    Counseling and Final Approval in Prisons

    A.     The incarcerated individual and the intended spouse/domestic partner will participate in counseling prior to marriage or entering into a state registered domestic partnership.



| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS | | |
| --- | --- | --- | --- |
| | REVISION DATE<br>8/13/20 | PAGE NUMBER<br>5 of 8 | NUMBER<br>**DOC 590.200** |
| **POLICY** | TITLE<br>**MARRIAGES AND STATE REGISTERED DOMESTIC PARTNERSHIPS** | | |

    1.    The counseling will be conducted by the officiating clergy, if qualified, or a certified professional counselor obtained by the couple.

        a.    The clergy or certified professional counselor will be provided with the individual's criminal history and DOC 20-444 Marriage/State Registered Domestic Partnership Counseling.  The form will be used to document the counseling session and all participants must sign it.

    2.    The couple will be responsible for any costs associated with the counseling.

    3.    The counseling will include a full disclosure of the criminal history to the intended spouse/domestic partner.

    4.    Minor children and other family members living in the home may be included in the counseling.

    5.    Counseling may be conducted by telephone or in person.  If conducted by phone, DOC 20-444 Marriage/State Registered Domestic Partnership Counseling may be signed electronically.

B.    The incarcerated individual will meet with the Superintendent/designee to discuss the marriage/state registered domestic partnership process.  The Superintendent has final approval for all requests to marry or enter into state registered domestic partnership.

    1.    The application and all related documents will be scanned into the electronic imaging file after a final decision is made and required forms are signed.

IV.    License/Certificate

A.    After the Superintendent has approved the marriage/state registered domestic partnership request, the intended spouse/domestic partner is responsible for obtaining the license/certificate.

    1.    The intended spouse/domestic partner will obtain the license application/ declaration and send it to the incarcerated individual, who will sign it in front of a notary public.



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 8/13/20 | 6 of 8 | **DOC 590.200** |

**POLICY**

| TITLE |
|---|
| **MARRIAGES AND STATE REGISTERED DOMESTIC PARTNERSHIPS** |

      2.      The incarcerated individual will then return the license application/ declaration to the intended spouse/domestic partner, who will obtain the license/certificate.

V.      Ceremony in Prisons

      A.      A ceremony will be held for marriages in compliance with state statute.  While not legally required, a ceremony will be offered to those entering into a state registered domestic partnership.

            1.      The facility Religious Coordinator will supervise the arrangements of the ceremony, which will be performed by:

                  a.      Volunteer clergy,
                  b.      A contract religious provider,
                  c.      The facility Religious Coordinator, or
                  d.      An outside officiant (e.g., magistrate, clergy) obtained by the incarcerated individual and intended spouse/domestic partner,

            2.      Any outside officiant must clear a National Crime Information Center (NCIC) background check and have Superintendent/designee approval based on the following:

                  a.      An officiant performing a religious ceremony must:

                          1)      Be qualified under RCW 26.04 to perform marriages in Washington State,

                          2)      Have no felony convictions within the past 10 years, and

                          3)      Submit a certified document verifying authority to perform the ceremony as recognized by the religious or faith-based organization of the incarcerated individual, along with a current letter of appointment or a letter stating the officiant is in good standing from the ordaining body/religious authority.

                  b.      A member of the judiciary performing a civil ceremony must submit a letter of appointment or oath of office.

      B.      The couple will be responsible for costs associated with the ceremony.

      C.      The ceremony will be private and conducted without media coverage.  In addition to the couple and officiant, the following individuals may attend the ceremony:



| | |
|---|---|
| **STATE OF WASHINGTON**<br>**DEPARTMENT OF CORRECTIONS** | **APPLICABILITY**<br>**PRISON/WORK RELEASE**<br>OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 8/13/20 | 7 of 8 | **DOC 590.200** |

**POLICY**

**TITLE**
**MARRIAGES AND STATE REGISTERED DOMESTIC PARTNERSHIPS**

     1.    Ceremony participants required by the religion or faith-based organization of the incarcerated individual or intended spouse/state registered domestic partner.  Participants must clear an NCIC background check and require Superintendent/designee approval.

     2.    Children of the incarcerated individual and/or intended spouse/state registered domestic partner.

     3.    A professional photographer, who must clear an NCIC background check and requires Superintendent/designee approval.

     4.    Up to 6 other attendees, as approved by the case manager.  Attendees must be on the individual's approved visitor list or be approved through the special visit process.

     5.    One incarcerated individual, if approved by the Superintendent/designee.

D.    All attendees must comply with dress standards in DOC 450.300 Visits for Incarcerated Individuals.  Exceptions require Superintendent/designee approval.

     1.    The intended spouse/domestic partner may bring clothing for the individual to wear during the ceremony, if approved in advance.

E.    Any items brought into the facility by an outside officiant or attendee require approval from the Superintendent/designee in advance.  Religious items will be consistent with the requirements for allowable religious items per DOC 560.200 Religious Programs.

     1.    Unless religious in nature, items brought into the facility that are outside the visit guidelines are intended for the visitor only.

F.    The incarcerated individual and intended spouse/state registered domestic partner must read, sign, and follow DOC 20-219 Acknowledgment of DOC 590.200 Marriages and State Registered Domestic Partnerships.

G.    After the ceremony, the Superintendent/designee will complete the Authorized Marriage/State Registered Domestic Partnership Report section of DOC 20-218 Marriage/State Registered Domestic Partnership Approval Routing.  The form will be scanned into the electronic imaging file, along with a copy of the certificate and/or license.

VI.    Photographs

95



| | APPLICABILITY |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON/WORK RELEASE** OFFENDER/SPANISH MANUALS |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 8/13/20 | 8 of 8 | **DOC 590.200** |

**POLICY**

TITLE

**MARRIAGES AND STATE REGISTERED DOMESTIC PARTNERSHIPS**

A.   Photography will meet the following requirements:

    1.   The couple will be responsible for any costs associated with photography.

    2.   Photographers will be an approved worker per DOC 700.100 Class III Work Programs or an approved professional photographer retained by the individual or intended spouse/partner.

    3.   Photographs will be reviewed for content and compliance with policy.

        a.   Photographs with suggestive or rude posturing, gang signs, or the appearance of gang affiliation will not be permitted.

        b.   Incarcerated individuals will not be photographed with other incarcerated individuals except with Superintendent/designee approval.

B.   If a digital camera is available at the facility, the intended spouse/domestic partner may bring a memory card to use in the camera consistent with DOC 280.310 Information Technology Security.

**DEFINITIONS:**

Words/terms appearing in this policy may be defined in the glossary section of the Policy Manual.

**ATTACHMENTS:**

None

**DOC FORMS:**

DOC 20-213 Marriage/State Registered Domestic Partnership Application for Intended Spouse/Domestic Partner Use
DOC 20-214 Marriage/State Registered Domestic Partnership Application
DOC 20-215 Marriage/State Registered Domestic Partnership Approval for Release of Information
DOC 20-218 Marriage/State Registered Domestic Partnership Approval Routing
DOC 20-219 Acknowledgment of DOC 590.200 Marriages and State Registered Domestic Partnerships
DOC 20-443 Marriage/State Registered Domestic Partnership Process Checklist
DOC 20-444 Marriage/State Registered Domestic Partnership Counseling

# EXHIBIT  9



STATE OF WASHINGTON
## DEPARTMENT OF CORRECTIONS
### CLALLAM BAY CORRECTIONS CENTER
1830 Eagle Crest Way • Clallam Bay, WA 98326-9723 • (360) 203-1500
FAX (360) 203-1210

November 4, 2020

Ms. Melissa Mesa
25330 62nd Avenue South, #CC07
Kent, WA  98032

**SUBJECT:**   Keodara, Say DOC#367524

Ms. Mesa:

This is to notify you that I have received information that leads me to believe your interactions with incarcerated individual Keodara, Say DOC#367524 at Clallam Bay Corrections Center (CBCC) create a risk to the security and operation of our facility or any Department of Corrections (DOC) facility. In May 2020 it is believed that you, in concert with and at the direction of incarcerated individual Keodara, assisted, aided, and/or conspired to introduce contraband into CBCC.

As a result, under DOC Policies 450.300 *Visits for Incarcerated Individuals*, your visitation and video visitation privileges with DOC are being terminated immediately and permanently. Be advised you have the right to appeal this decision to the Assistant Secretary for Prisons, who has the final approval on visiting privilege appeals, at 7345 Linderson Way SW, Olympia, WA 98504-1118. If you choose to appeal this decision you must write a letter stating the reasons why you feel your visiting privileges should be reinstated and the circumstances surrounding the termination.

Further, under DOC Policies 450.100 *Mail for Individuals in Prison* and 450.200 *Telephone Use by Incarcerated Individuals* all forms of communication are hereby restricted immediately and permanently. This includes but is not limited to any telephonic, written, or electronic communication. Be advised that policy does not provide an option for appeal of the restriction of all communication. We understand and appreciate the positive influence that friends and family have on incarcerated individuals, but in some cases the restriction of communication is appropriate.

Sincerely,

Jeri Boe, Superintendent
Clallam Bay Corrections Center

JB:lp
cc:   Keodara, Say #367524                    CPM Newman
       All DOC Superintendents                CUS Gross
       HQ Visitation Unit                     Counselor Irving
       CBCC IIU Case File                      Electronic File
       CBCC Mailroom Sgt. Stone

*" Working Together for SAFER Communities"*


recycled paper

Exhibit 9

# EXHIBIT  10

**RECEIVED**

November 20, 2020

**DEC 09 2020**

**Mr. Robert HERZOG**
Assistant Secretary for Prisons
7345 Linderson Way SW
Olympia, WA 98504-1118

**CORRESPONDENCE UNIT**

**SUBJECT**:    Appeal (KEODARA, DOC#367524)

Mr. HERZOG,

      This letter is to appeal a decision/allegation made by Clallam Bay Corrections Center's (CBCC) Superintendent Ms. Jeri BOE.  A letter dated November 4, 2020, postmarked November 6, 2020, signed by CBCC Superintendent BOE wrote, my interactions with incarcerated individual Mr. Say KEODARA, DOC #367524 at CBCC, creates a risk to the security and operation of the said facility (CBCC) or any Department of Corrections (DOC) facility.

      Thus, under DOC Policy 450.300, *Visits for Incarcerated Individuals,* **she believes** that I assisted, aided, and/or conspired to introduce contraband into CBCC, resulting in her decision of immediate and permanent termination of visitations, video visits, etc., and all privileges with DOC, to include but not limited to any telephonic, written or electronic form of communication. As instructed, I am to state to you the reasons why I feel my visiting privileges should be reinstated and the circumstances surrounding the termination.

      Mr. HERZOG, the circumstances surrounding the current *termination of privileges*, is unknown to me at this point in time. I do **not** know what the circumstances are that led Ms. BOE to make this harsh allegation. Nor at any time, had I been given any form of due process, whether it was formal or informal, a sanction – to sanction hearing, or a phone call. I was not provided any evidence or was I offered a chance to contest the allegations to be undeniably false. I received a letter informing me of the permanent termination and restrictions on all privileges, to include how it is appropriate for the termination. I have yet to be advised, or have I been able to understand what I have done that would force Ms. BOE to introduce such a severe penalty, with lack of evidence.

      I am humbly requesting for your assistance, in reinstating the stated privileges that were taken. The decision/allegations are false, and the information given has no merit. I can assure you I had and have **no** intentions of any wrongdoing in any way shape or form.  I would not violate any policy to include DOCs policy, or violate security. To include assist, aide or would conspire to introduce anything whether a contraband or not to CBCC, or any other facility or other establishment.The allegations, lack of evidence, and the subsequent non-compliance of DOC policy 450.300, leading to the punishment of permanent termination of said privileges under her definition of belief, is unjust.

Thank you for your attention to this matter.

Melissa Mesa
25330 62nd Ave S Apt CC207
Kent, WA 98032
(214) 437-6862

Exhibit 10

# EXHIBIT 11

STATE OF WASHINGTON
**DEPARTMENT OF CORRECTIONS**
P.O. Box 41100 • Olympia, Washington 98504

December 14, 2020

Ms. Melissa Mesa
25330 62nd Avenue S., Apt. CC207
Kent, Washington 98032

Dear Ms. Mesa:

Thank you for your letter requesting that your termination be overturned to participate in the visit program with Say Keodara, DOC 367524

We understand and appreciate the positive influence that friends and family have on incarcerated individuals. The visiting program is an important part of our commitment to maintaining ties to family and friends for incarcerated individuals. However, in some cases, participation in this program is not appropriate.

Visitation is a privilege; as such, the Department has the authority to restrict/deny/suspend/ terminate visit privileges to any individual who may be a security concern. Policy 450.300, Visits for Incarcerated Individuals, states "Persons involved in attempting/conspiring to introduce, or aiding and abetting another to introduce contraband will have their visit privileges suspended or permanently terminated".

Based on records reviewed, due to safety and security concerns, the termination of visit privileges is appropriate and remains in place at this time. All avenues for appeal have been exhausted. Future correspondence regarding your visitation privileges, whether sent by you or by someone on your behalf, will not receive a response.

Sincerely,

Robert L. Herzog, Assistant Secretary
Prisons Division

RH:ch:DEP55454&55491

cc:    Mike Obenland, Deputy Director
       Jeri Boe, Superintendent
       Lori Lawson, Associate Superintendent
       Tanner Germeau, Visit Sergeant
       Leona Irving, Classification Counselor
       Say Keodara, DOC 367524
       Electronic File

**"Working Together for SAFE Communities"**

Exhibit 11

bcc: Conrad Artis, Investigator



# EXHIBIT 12



Department of
**Corrections**
WASHINGTON STATE

# Mailbox Request

## Printed by Pate, Lesley E.

**Offender:**      KEODARA, SAY SULIN #367524 on 6/21/2021 1:11 PM

**Mailbox:**      Superintendent-B01

**Status:**      Completed

**Assigned To:**    Boe, Jeri L. on 6/21/2021 2:16 PM

**Completed By:**   Boe, Jeri L. on 7/12/2021 8:24 AM

## Messages

| Sent | From | Read | Message |
|------|------|------|---------|
| 6/21/2021 1:11 PM | Offender | | CAN WE SCHEDULE A MEETING? |
| 6/21/2021 2:16 PM | Boe, Jeri L. | 6/24/2021 12:53 PM | What is the topic? and how long do you need? |
| 6/24/2021 12:54 PM | Offender | | BRADY TOLD ME THAT IF I HELPED YOU GUYS,YOU GUYS WOULDUNRESTRICT MS MESA. SO ITS ABOUT PPL FALLINGOUT HIGH IN B |
| 7/07/2021 9:28 AM | Boe, Jeri L. | 7/08/2021 12:53 PM | I cannot overturn Mesa. |
| 7/08/2021 12:55 PM | Offender | | WHO CAN? WHAT IF U JUST SAY U HAD MISSINFORMATION,BASED ON MY LAST 603 N I LET GO OF THE SUIT?ISHERE AGAIN |



Department of
**Corrections**
WASHINGTON STATE

# Mailbox Request

## Printed by Pate, Lesley E.

| | |
|---|---|
| **Offender:** | KEODARA, SAY SULIN #367524 on 7/08/2021 12:57 PM |
| **Mailbox:** | Superintendent-B01 |
| **Status:** | Completed |
| **Assigned To:** | Boe, Jeri L. on 7/09/2021 10:47 AM |
| **Completed By:** | Boe, Jeri L. on 7/12/2021 8:24 AM |

## Messages

| Sent | From | Read | Message |
|---|---|---|---|
| 7/08/2021 12:57 PM | Offender | | I NEVER INVOLVED HER IN NO CRIM.ACTIVITY. WEPLANNED TO MARRY.SHE 47,IM 27 BUT DONT CARE.I WOULDNT,WONT RISK LOSING HER.SHES ONE OF A KIND N ALL I HAD. LETS FIGURE SOMETHING OUT.PLEASE |
| 7/09/2021 10:47 AM | Boe, Jeri L. | 7/09/2021 7:23 PM | I am not sure what there is to figure out. I found that she in fact was involved with your criminal activity. I take the introduction of drugs very seriously therefore I cannot imagine how you and I can figure it out. |
| 7/09/2021 7:25 PM | Offender | | WHY R U JUST NOW TELLING ME THISS? ALL U ORIGINALLY SAID IS ITS UNSAFE FOR US TO TALK N THAT I DIRECTED HER TO DO SOMETHING IN MAY OF 2020. WHAT IS THAT SOMETHING? JANIA WAS IN MY WRITE UP,I WAS ACCUSED OF CRIM. ACTIVITY WITH HER N FOUND GUILT. NEVER MS.M |