1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAY SULIN KEODARA,

                  Plaintiff,

     v.

JERI BOE and ROBERT HERZOG,

                Defendants.

Case No. 3:21-cv-05129-TL-TLF

REPORT AND
RECOMMENDATION

Noting Date: September 30, 2022

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

      This matter is before the Court on defendants' motion for summary judgment. Dkt. 60 (Defendants' Motion for Summary Judgment[1]). Plaintiff, who is proceeding *pro se*, brought this suit under 42 U.S.C. § 1983 alleging defendants restricted his ability to contact a particular individual – his fiancée -- outside the prison thereby violating his constitutional rights under the First, Eighth, and Fourteenth Amendments. Dkt. 8 (Complaint). This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

---

[1] On August 5, 2022, this Court granted defendants' motion to seal Exhibit 1 and Exhibit 12 of their motion for summary judgment. Dkt. 58. This Court also granted defendants' motion to replace their summary judgment motion and declarations. *Id.* On September 2, 2022, the Court ordered defendants to file a replacement motion for summary judgment, replacement declaration for Jeri Boe and all supporting exhibits with Exhibit 12 sealed, and declaration of Conrad Artis and all supporting exhibits with Exhibit 1 sealed. Dkt. 59. Thus, the Court reviews and considers defendants' motion for summary judgment and accompanying declarations and sealed exhibits in dockets 60-64 for this Report and Recommendation.

REPORT AND RECOMMENDATION - 1

1    Having reviewed defendants' motion, plaintiff's response[2], and the remaining

2   record, the Court recommends that defendants' motion for summary judgment should

3   be granted in part -- regarding all claims for damages. But the Court should deny

4   defendants' summary judgment motion on two claims – a retaliation claim, and a right to

5   marriage claim -- concerning declaratory judgment and injunctive relief.

6                                    I.      DISCUSSION

7   **A. Summary Judgment Standard**

8    Summary judgment is proper when the pleadings, discovery and affidavits "show

9   that there is no genuine issue as to any material fact and that the moving party is

10  entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*,

11  477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the

12  case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a

13  material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a

14  verdict for the nonmoving party. *Id.*

15   When applying these standards, the Court must draw all reasonable inferences

16  in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d

17  1009, 1013 (9th Cir.2006). The moving party can carry its initial burden by producing

18  affirmative evidence that negates an essential element of the nonmovant's case, or by

19  establishing that the nonmovant lacks the quantum of evidence needed to satisfy his

20  burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir.

21  2001).

22

23  _____

[2] The Court grants plaintiff's motion for extension of time to respond to defendants' motion for summary
24  judgment. Dkt. 43. Plaintiff responded to defendants' motion on May 5, 2022. Dkts. 50, 51.

25

Once this has occurred, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and affirmatively establish a genuine issue on the merits of their case. Fed.R.Civ.P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. The nonmoving party must demonstrate that the disputed fact is material, and that the dispute is genuine. *Id.* at 248–49.

The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp.*, 477 U.S. at 323. However, if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment may not be granted. *Anderson*, 477 U.S. at 250.

**B. Factual Allegations**

Plaintiff is an inmate at Clallam Bay Corrections Center. Dkt. 61 (Declaration of Jeri Boe) at ¶22. Defendants assert that, in April of 2020, the Intelligence and Investigation Unit (IIU) received confidential information that a group of inmates, community members, and a prison employee were acting together to run a prison drug ring. *Id.* at ¶23. By August of 2020, investigators had identified plaintiff and his girlfriend, Melissa Mesa, as members of the drug operation. Dkt. 63 (Declaration of Conrad Artis)

1    at ¶¶ 10, 13. Ms. Mesa -- allegedly a U.S. Customs and Border Patrol Agent -- was not

2    an inmate. *Id.* at ¶11.

3         Mr. Artis was the primary investigator for IIU. *Id.* at ¶9. Defendants assert that, at

4    the FBI's request, Mr. Artis blocked all phone numbers associated with Ms. Mesa from

5    calling into the prison or from being dialed from within the facility. *Id.* at ¶19; *see also*

6    Dkt. 63 at Exhibit 3. Plaintiff and other inmates involved in the operation were infracted

7    for introducing unauthorized drugs into the prison. Dkt. 63 at ¶20. The block was lifted

8    on September 1, 2020, after plaintiff filed a grievance concerning the block. *Id.* at ¶21.

9         According to the defendants, shortly after this, Ms. Mesa and plaintiff resumed

10   contacting each other and allegedly impeded the FBI's investigation. *Id.* at ¶22. The FBI

11   requested that Mr. Artis re-block all numbers associated with Ms. Mesa. *Id*. Plaintiff

12   subsequently filed another grievance on October 8, 2020, and the contact restrictions

13   were lifted again, after Mr. Artis consulted with the FBI. *Id.* at ¶23; *see also* Dkt. 63 at

14   Exhibit 4.

15        The defendants assert that during phone calls, plaintiff would allegedly give Ms.

16   Mesa instructions on how the drugs would be transferred in the prison. Dkt. 61 at ¶27.

17   By July 2020, Ms. Mesa had allegedly obtained multiple phones, phone numbers, and

18   Cash App accounts to facilitate the drug transactions, and toward the end of May 2020,

19   Ms. Mesa allegedly handled the drug money and overall drug operation. Dkt. 63 at ¶¶

20   14,15. Defendants assert that plaintiff also gave Ms. Mesa's number to other offenders

21   so they could contact her about drug transactions. *Id.*[3]

22

23   [3] Defendants provided more details to support their allegations of how Ms. Mesa was involved in the drug
     operation with plaintiff; however, such information is in the sealed portions of defendants' declarations.
24   Thus, the Court will not divulge those details in light of the security risk the information could pose to the
     prison and inmates.

25

REPORT AND RECOMMENDATION - 4

On October 28, 2020, the Department of Corrections conducted a disciplinary hearing on allegations that plaintiff had introduced or transferred any authorized drug or drug paraphernalia into the prison. *Id.*at ¶25. Plaintiff was subsequently found guilty. *Id.*

Defendants assert that on November 4, 2020, Defendant Jeri Boe – the Superintendent of Clallam Bay Corrections Center – permanently terminated Ms. Mesa's communications with the prison because her interactions with plaintiff created a risk to the security and operation of the prison. Dkt. 61 at ¶ 32. Ms. Mesa and plaintiff both appealed this decision. Dkt. 61 at ¶35. Their appeals were denied. *Id.* at ¶36.

On December 9, 2020, the Clallam Bay Corrections Center's Correspondence Unit received a letter from Ms. Mesa directed to Defendant Robert Herzog -- the Assistant Secretary for Prisons, for the Washington State Department of Corrections. Dkt. 61 at Exh. 10. Ms. Mesa requested that Defendant Herzog overturn the decision to terminate her contact with the Department. *Id.* Defendant Herzog denied Ms. Mesa's request and informed her that he would not respond to future correspondence from her. Dkt. 61 at Exh. 11.

On March 9, 2021, plaintiff filed a complaint with this Court, alleging that Defendant Boe had violated his (1) Fourteenth Amendment due process rights, (2) Fourteenth Amendment equal protection rights, (3) right to freedom of expression under the First Amendment by restricting Keodara's communications with Ms. Mesa and for retaliatory loss of his other visitations rights, and (4) Fourteenth Amendment Right to marry Ms. Mesa. Dkt. 8 at 4, 8, 12, 20, 22. In the complaint, plaintiff also alleges that Defendant Herzog violated his Eighth and Fourteenth Amendment rights by failing to overturn the restrictions on Ms. Mesa's ability to communicate with him at the prison.

1    Dkt. 8 at 17. Plaintiff's complaint, and declarations submitted with the complaint, are

2    attested to by plaintiff under penalty of perjury. Dkt. 8 at 28, 30-31, 42, 88.

3         In his response to defendants' motion for summary judgment, plaintiff alleges that

4    defendants' investigation into the drug ring was flawed and produced an erroneous

5    conclusion – plaintiff states that Ms. Mesa never introduced contraband into the prison

6    either on her own or on plaintiff's directive. Dkt. 51 (Declaration of Say Sulin Keodara) at

7    4, ¶21. He did not directly admit or deny his own involvement in the drug ring, but he

8    states that he was "[n]ever found guilty of bringing in any drugs into CBCC in May of

9    2020." *Id*. Plaintiff also contends "Ms. Mesa never brought drugs into CBCC or any

10   other DOC facility nor did I ever direct her to." *Id*.

11        He alleges that Defendant Boe terminated plaintiff's contact with Ms. Mesa in

12   retaliation for plaintiff's use of the prison grievance system. *Id.* at ¶33. Specifically,

13   plaintiff states that, after refusing to speak with Mr. Artis about the drug ring

14   investigation, plaintiff's phone pin was turned off. *Id.* at ¶35.

15        Plaintiff filed his first grievance on September 1, 2020, which was resolved. *Id.* at

16   ¶36; *see also* Dkt. 60 at Exh. 3. Plaintiff states that nineteen days later, his phone pin

17   was again turned off and he was restricted from calling anyone, including Ms. Mesa.

18   Dkt. 51 at ¶37.

19        As a result, plaintiff filed his second grievance on October 8, 2020, which was

20   resolved. *Id.; see also* Dkt. 60 at Exh. 4. However, plaintiff alleges that thirteen days

21   after the second grievance was resolved, Defendant Boe restricted plaintiff from having

22   any communication or visitation with Ms. Mesa. Dkt. 51 at ¶¶38-39. Plaintiff states that

23   terminating his communication with Ms. Mesa was a disciplinary sanction against him,

24

25

and he was not given an infraction report, disciplinary hearing, or written disposition of findings of facts. Dkt. 51 at 5, ¶¶ 26-27. He also makes allegations that the primary investigator for IIU, Mr. Artis, stated that plaintiff could file grievances against the Superintendent and that plaintiff would lose, and plaintiff would need to say "bye to your wifey". Dkt. 51 at 6, ¶38.

Plaintiff further alleges that on January 16, 2021, he submitted a kite requesting to marry Ms. Mesa but was denied due to the visitation and communication restrictions placed against him with Ms. Mesa. Dkt. 51 at pp. 2-3, ¶12; p. 37 at 132; p. 39.

**C. 42 U.S.C. § 1983**

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm -- even if due to another's negligent conduct -- does not in itself necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant affirmatively committed an act, participated in another's affirmative act, or omitted to perform an act which they were legally required to do, that caused the deprivation. *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

1

2        In addition, government officials may not be held liable for the unconstitutional

3    conduct of their subordinates under a theory of respondeat superior. . . . *See Monell v.*

4    *New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious

5    liability for a municipal "person" under 42 U.S.C. § 1983). Because vicarious liability is

6    inapplicable to § 1983 suits, a plaintiff must plead that each government-official

     defendant, through the official's own individual actions, has violated the Constitution.

7    **D. First Amendment Claim and Fourteenth Amendment Right to Marriage
     Claim Against Defendant Boe**

8

9        1.  Plaintiff's First Amendment Retaliation Claim Against Defendant Boe

10       Plaintiff alleges Defendant Boe violated his First Amendment right to freedom of

11   expression and association because she terminated plaintiff's communication with Ms.

12   Mesa in retaliation for plaintiff filing grievances. Dkt. 8 at 12-13.

13       An allegation of retaliation for a prisoner's exercise of his First Amendment right

14   to file grievances or pursue litigation against prison officials may support a claim

15   under § 1983. *See Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994). Without this

16   constitutional protection, inmates would be left without a viable mechanism to remedy

17   prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). For an

18   incarcerated prisoner, "a viable claim of First Amendment retaliation entails five basic

19   elements: (1) An assertion that a state actor took some adverse action against an

20   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

21   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

22   reasonably advance a legitimate correctional goal." *Id.* at 567-568.

23       Defendants have not met their burden of showing an absence of a genuine

24   dispute of material fact for this particular claim. Specifically, there is a genuine dispute

25

REPORT AND RECOMMENDATION - 8

1    of material fact with respect to whether prohibiting plaintiff from communicating with Ms.

2    Mesa reasonably advanced a legitimate correctional goal. Defendants allege that Ms.

3    Mesa was directly involved with the drug ring in the prison, and continued

4    communication between plaintiff and Ms. Mesa demonstrated a risk to the safety and

5    security of the facility. Dkt. 63 at ¶¶10-11. A genuine dispute of material fact exists

6    because plaintiff alleges that he never directed Ms. Mesa to bring contraband into the

7    prison, and defendants' investigation into the matter was flawed. Dkt. 51 at ¶¶21, 26.

8    And, plaintiff contends this is a material fact, because if Ms. Mesa was not involved with

9    the drug ring, restricting plaintiff's communication with Ms. Mesa could not have

10   furthered penological goals and was only done in retaliation for plaintiff filing grievances.

11          Further, plaintiff alleges that other inmates were not restricted from

12   communicating with Ms. Mesa. Dkt. 51 at ¶¶16-20. However, this fact, while disputed, is

13   not necessarily material for the purposes of summary judgment on this claim – whether

14   other inmates were, or were not, allowed to communicate with Ms. Mesa does not

15   impact any of the material issues concerning whether plaintiff was retaliated against for

16   submitting a grievance.

17          Although plaintiff's statement that Ms. Mesa was not involved in the drug ring is

18   conclusory to some degree (considering plaintiff did not submit a declaration from Ms.

19   Mesa), the Court acknowledges that it should construe plaintiff's pleadings liberally;

20   thus, plaintiff's statement that he has personal knowledge and that his testimony would

21   be admissible evidence of her non-involvement raises a genuine dispute of material fact

22   as to whether defendants retaliated against plaintiff for using the prison grievance

23   system. Defendants' motion for summary judgment on this claim should be DENIED as

24

25

to the plaintiff's claim for declaratory and injunctive relief. As discussed below, summary judgment is appropriate, on the basis of qualified immunity, regarding plaintiff's claim for damages.

### 2.  Plaintiff's Fourteenth Amendment Claim Against Defendant Boe, Concerning Plaintiff's Right to Marry Ms. Mesa

Plaintiff alleges that Defendant Boe violated his Fourteenth Amendment right to marry Ms. Mesa when plaintiff's visitation and communication rights with Ms. Mesa were terminated, and when he asked if he could marry Ms. Mesa, he was told that he could not. Dkt. 8 at 20.

The Fourteenth Amendment protects the right of individuals to marry. *Obergefell v. Hodges*, 576 U.S. 644, 645 (2015).

In *Turner v. Safley*, 482 U.S. 78, 96-99 (1987), the Court found that a prison regulation was unconstitutional under the Fourteenth Amendment because it placed an unconstitutional burden on an inmate's right to marry. The regulation at issue prohibited any inmate from getting married unless the prison superintendent approved the marriage after making a finding of compelling reasons for approval. The Court found the government's regulation was not "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. at 89; *compare, Miller v. Wenerowicz,* 135 F. Supp. 3d 306, 313-314 (E.D. Penn. 2015) (contrasting the delay in allowing marriage to proceed, with an indefinite ban on the marriage). The Court observed that "[n]o doubt legitimate security concerns may require placing reasonable restrictions upon an inmate's right to marry, and may justify requiring approval of the superintendent." *Turner,* 482 U.S. at 97. The Court also stated, "[i]t is undisputed that Missouri prison officials may regulate the time and circumstances under which the marriage ceremony itself takes place. . . .On

this record, however, the almost complete ban on the decision to marry is not reasonably related to legitimate penological objectives." *Id.* at 99.

Defendants allege that they did not violate plaintiff's right to marry because any contact between Ms. Mesa and plaintiff raised prison security concerns due to both of their alleged their role in the drug ring. Plaintiff, however, has raised facts contrary to this point as discussed in section II.A.

He states that Ms. Mesa never brought contraband of any kind into the prison either on her own or at plaintiff's direction. Therefore, plaintiff contends Defendant Boe did not have legitimate reason to prohibit plaintiff and Ms. Mesa from getting married. This is a genuine dispute of material fact. If the investigation reached the wrong conclusion, and Ms. Mesa actually was not involved with the alleged drug activity, then the outright denial (as opposed to a delay during an investigation) of plaintiff's marriage to her may be a violation of plaintiff's right to marry. Therefore, summary judgment should be DENIED on this claim, with respect to plaintiff's claim for equitable relief. As discussed below, summary judgment is appropriate, on the basis of qualified immunity, for plaintiff's claim for damages.

In addition, there may be a dispute of fact regarding whether plaintiff's marriage being denied because of a concern about contact between plaintiff and Ms. Mesa is reasonably related to a legitimate penological interest. Even if contact between Ms. Mesa and plaintiff is restricted, that does not mean there would necessarily be a legitimate penological reason to prohibit the marriage absolutely and indefinitely (as opposed to delaying it for a certain period of time, or allowing the marriage but continuing to restrict the methods of communication).

REPORT AND RECOMMENDATION - 11

**E. Procedural Due Process Claim Against Defendants, Equal Protection Claim Against Defendant Boe, and Eighth Amendment Claim Against Defendant Herzog**

    1.  Plaintiff's Procedural Due Process Claim Against Defendants Boe and Herzog

Plaintiff alleges that his Fourteenth Amendment right to due process was violated when Defendant Boe terminated Ms. Mesa's contact and communication privileges with plaintiff, which was then approved by Defendant Herzog. Dkt. 8, at ¶1.7. Plaintiff argues that this action was a disciplinary sanction against him, and thus, he should have been provided with an infraction report, given notice of which rule he violated, as well as a disciplinary hearing, and a written disposition of findings. *Id.* at ¶¶1.13-1.16.

Procedural due process applies to deprivations of the Fourteenth Amendment's protection of liberty and property. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners possess a constitutionally protected liberty interest "when a change occurs in confinement that imposes an atypical and significant hardship" compared that of ordinary prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Due Process Clause itself does not give rise to a protected liberty interest in a "paying prison job, the possibility of favorable transfers, or particular phone and yard privileges." *See Davis v. Small*, 595 Fed.Appx. 689, 691 (9th Cir. 2014).

Here, plaintiff does not assert facts sufficient to show that defendants deprived him of due process. First, plaintiff has not shown that the decision to terminate Ms. Mesa's visitation rights was a disciplinary sanction against him. Rather, her privileges were administratively terminated. When defendants deprived plaintiff of contact with Ms. Mesa, this did not impose an atypical or significant hardship compared with that of

prison life because normal prison life involves "potential restrictions on speech or association." *See Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 130 (1977). Thus, plaintiff did not have a constitutional liberty interest in being able to communicate with Ms. Mesa.

Therefore, the Court should GRANT defendants' motion for summary judgment as to plaintiff's Due Process Clause claim.

### 2.  Plaintiff's Equal Protection Claim Against Defendant Boe

Plaintiff further alleges that Defendant Boe violated his right to equal protection because Defendant Boe did not terminate any and all communication between other inmates and their non-prisoner participants even though those inmates were also infracted for introducing drugs and were found guilty.

To establish an Equal Protection violation under 42 U.S.C. § 1983, plaintiff must show that the defendants acted with "an intent or purpose to discriminate against the plaintiff based upon membership in a protected class". *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). Protected classes include race, sex, and national origin. *Engquist v. Oregon Dep't of Agr.,* 553 U.S. 591, 595 (2008). If plaintiffs have not been discriminated against based on their membership to a protected class, they may still be able to assert a "class-of-one" equal protection claim, wherein they allege that the accused discriminated against them for "arbitrary, vindictive, and malicious reasons". *Id.*

Yet some state actions are not subject to class-of-one claims for disparate treatment "because treating like individuals differently is an accepted consequence of the discretion granted" to states to carry out certain actions". *Id.* at 603. Further, plaintiffs must show that there is a "pattern of [the state] generally exercising [its]

discretion in a particular manner while treating one individual differently *and* detrimentally" for them to have a basis for an Equal Protection violation under a "class-of-one" theory. *See Towery v. Brewer,* 672 F.3d 650, 661 (9th Cir. 2012).

Here, plaintiff does not provide facts sufficient to indicate that Defendant Boe violated plaintiff's equal protection rights. Specifically, plaintiff has not provided information indicating that Boe intended to discriminate against plaintiff based on plaintiff's membership in a protected class. Plaintiff also fails to assert facts indicating that Defendant Boe had a pattern of treating him "differentially and detrimentally." *Towery*, 672 F.3d at 661.

Thus, this Court should GRANT defendants' motion for summary judgment with respect to plaintiff's equal protection clause claim.

### 3.  Plaintiff's Eighth Amendment Claim Against Defendant Herzog

Finally, plaintiff argues that Defendant Herzog violated his Eighth Amendment rights when he failed to overturn Defendant Boe's decision to terminate Ms. Mesa's privileges at the prison. Dkt. 8 at 18.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners. *Id.* at 833. However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834.

In cases alleging a constitutional violation based on a failure to prevent harm, the plaintiff must first meet an objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see Clouthier v. County*

*of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). A plaintiff must also meet a subjective component by showing the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind.").

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Defendant Herzog's decision to uphold the termination of Ms. Mesa's visitation and communication privileges did not create an excessive risk to the health or safety of plaintiff. Plaintiff alleges only that "relationship with his fiancé has gone rocky" and he has spent many hours working on this lawsuit. Dkt. 8 at 12, 13. Plaintiff fails to assert any facts that would support a claim that plaintiff's health or safety have been put at serious risk of any harm.

Further, if plaintiff is arguing that he was subjected to cruel and unusual punishment under the Eighth Amendment because he was denied any communication with Ms. Mesa, the Ninth Circuit has held that the denial of visitation privileges does not constitute an Eighth Amendment violation. *See Toussaint v. McCarthy,* 801 F.2d 1080,

1   1113 (9th Cir.1986) (citing *Ramos v. Lamm,* 639 F.2d 559, 580 n. 26 (10th Cir.1980)

2   ("weight of present authority clearly establishes that there is no constitutional right to

3   contact visitation ... We agree with this view."), *cert. denied,* 450 U.S. 1041(1981).

4        Thus, defendants' motion for summary judgment on plaintiff's Eighth Amendment

5   claim should be GRANTED.

6   **F.  Qualified Immunity**

7        Unless Plaintiff makes a two-part showing, qualified immunity shields

8   government officials from liability. The plaintiff must show both: (a) that the official(s)

9   violated a federal statutory or constitutional right and (b) that—at the time of the alleged

10  act or failure to act—there was clearly established law that defined the contours of the

11  federal right, such that every reasonable official would understand that what they are

12  doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

13       When qualified immunity is reviewed in the context of a defense motion for

14  summary judgment, the evidence must be considered in the light most favorable to the

15  plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per

16  curiam). If there is a genuine issue of material fact concerning both: (1) Whether it

17  would be clear to every reasonable officer that their conduct was unlawful under the

18  circumstances they confronted, and (2) Whether the defendant's conduct violated a

19  constitutional right", then summary judgment granting qualified immunity is not

20  appropriate. *Daniels Sharpsmart, Inc. v. Smith,* 889 F.3d 608, 617 (9th Cir. 2018);

21  *Bonivert v. City of Clarkston*, 883 F.3d 865, 871-72 (9th Cir. 2018).

22       With respect to plaintiff's Eighth Amendment claim against Defendant Herzog, his

23  equal protection clause claim against Defendant Boe, and his due process clause claim

24

25

against both defendants, the facts do not show -- as discussed above -- that defendants' acts violated plaintiff's Constitutional rights. Accordingly, defendants should be entitled to qualified immunity with respect to damages sought by plaintiff on those claims because both prongs of the qualified immunity test are not satisfied.

With respect to plaintiff's First Amendment retaliation claim, Defendant Boe has not shown there are no genuine disputes of material fact concerning whether retaliation occurred and whether she had a legitimate penological reason in restricting plaintiff from communicating with and visiting Ms. Mesa after plaintiff filed his grievances. The Court must therefore determine whether plaintiff has satisfied the clearly established law prong of the qualified immunity test -- that any reasonable officer in the defendant's shoes would have been on notice that her conduct, i.e., terminating all contact between plaintiff and Ms. Mesa -- was unlawful in the situation she confronted. *Plumhoff v. Rickard,* 572 U.S. 765, 779 (2014). "[R]easonableness is judged against the backdrop of the law at the time of the conduct," and although the law "does not require a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148,1152 (2018) (quoted sources omitted, alteration added).

The "clearly established law" is not defined so stringently "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Russell v. Lumitap,* 31 F.4th 729, 737 (2022) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

A plaintiff must show either "controlling authority in their jurisdiction at the time of the incident which clearly established" the right being asserted, or "a consensus of

1    cases of persuasive authority such that a reasonable officer could not have believed

2    that [their] actions were lawful." *Wilson v Lane,* 526 U.S. 603, 617 (1999); *Russell v.*

3    *Lumitap,* 31 F.4th at 737. If a right is clearly established by decisional authority of the

4    Supreme Court or the Ninth Circuit, then the Court need inquire no further. *Boyd v.*

5    *Benton Cnty.,* 374 F.3d 773, 781 (9th Cir. 2004). It is plaintiff's burden to show that legal

6    precedent was clearly established at the time of the incident in 2020. *Galen v. County of*

7    *Los Angeles,* 477 F.3d 652, 665 (9th Cir. 2007).

8        In this situation, plaintiff cited one case to support his argument that the law was

9    clearly established – *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). *See* Dkt. 50 at

10   19.

11       In *Pratt*, the Ninth Circuit held that the prohibition against retaliatory punishment

12   is "clearly established law" for qualified immunity purposes. *Id*. at 806. More specifically,

13   however, the law clearly established that defendants cannot *transfer* a prisoner from

14   one correctional institution to another in order to punish the prisoner for exercising his

15   First Amendment right to pursue civil litigation in the Courts. The facts and

16   circumstances in this case are different than in *Pratt*, and plaintiff failed to bring forward

17   any other cases to meet his burden. The Court is aware of neither controlling authority

18   in this jurisdiction, nor a consensus of persuasive authority.

19       Therefore, Defendant Boe is entitled to qualified immunity from damages on this

20   claim.

21       Finally, as discussed above, Defendant Boe has not shown there is no genuine

22   dispute of material fact that they had a legitimate penological interest in restricting

23   plaintiff and Ms. Mesa from getting married. A refusal to grant plaintiff's request to marry

24

25

1   must be "reasonably related to legitimate penological interests." *Turner v. Safley,* 482

2   U.S. at 89.Thus, the Court must determine whether it would be clear to a reasonable

3   officer that her conduct was unlawful in the situation she confronted. *Id.* at 202.

4          Specifically, would every reasonable officer have understood Defendant Boe's

5   conduct was unlawful when she denied plaintiff's request to marry Ms. Mesa under

6   these specific circumstances; although it is unclear to what extent plaintiff may have

7   been involved in introducing contraband into the prison, it is disputed whether Ms. Mesa

8   had any involvement. Plaintiff did not meet his burden to show that precedent was

9   clearly established on these facts, as he did not cite to any case law, and the Court is

10  not aware of any such clearly established law. *See Gordon v. County of Orange,* 6 F.4th

11  961, 969 (9th Cir. 2021) (resolving the "clearly established law" question presents a pure

12  question of law and requires the Court to draw on its knowledge of relevant precedent

13  rather than solely relying on cases cited by plaintiff); *Miller v. Wenerowicz,* 135 F. Supp.

14  3d 306, 313-314 (E.D. Penn. 2015) (qualified immunity applied where prison official

15  postponed approval of plaintiff's marriage, but did not reject it outright – the marriage

16  was delayed but not denied).

17          The Court should therefore hold that Defendant Boe is entitled to qualified

18  immunity from damages on this claim.

19          The Court notes that qualified immunity is an immunity from a suit for money

20  damages, but this does not provide immunity from a suit seeking declaratory

21  or injunctive relief. *Daniels Sharpsmart, Inc. v. Smith,* 889 F.3d 608, 616 (9th Cir. 2018);

22  *Hydrick v. Hunter*, 669 F.3d 937, 939–40 (9th Cir. 2012).

23

24

25

REPORT AND RECOMMENDATION - 19

In this case, plaintiff seeks declaratory judgment stating that Defendant Boe retaliated against plaintiff for filing a grievance in violation of his First Amendment rights and that Defendant Boe violated plaintiff's Fourteenth Amendment rights by prohibiting plaintiff from marrying Ms. Mesa. Dkt. 8 at 25-26. Further, he seeks an injunction ordering defendants to reinstate plaintiff's visitation and communication privileges with Ms. Mesa and allow plaintiff and Ms. Mesa to get married. *Id.* at 27.

There is no right to a jury trial in federal court on claims for declaratory and injunctive relief under 42 U.S.C. § 1983. *See City of Monterey v. Del Monte Dunes,* 526 U.S. 687, 708-709 (1999); Fed. R. Civ. P. 39(c).Therefore, with respect to plaintiff's request for injunctive relief on his First Amendment retaliation claim and his Fourteenth Amendment right to marry claim, he should still be permitted to seek such relief in a bench trial. *See Hydrick v. Hunter,* 669 F.3d 937, 939-940, 942 (9th Cir. 2012) (on remand, plaintiffs are allowed to proceed with claims for declaratory relief and damages even though damages claims were dismissed under qualified immunity); *Los Angeles Police Protective League v. Gates,* 995 F.2d 1469, 1473 (9th Cir. 1993) (clarifying the role of the jury on claims for damages, and the role of the judge on claims for equitable relief).

## II.    CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should:

- GRANT defendants' motion for summary judgment on plaintiff's due process clause claim against defendants;

- GRANT defendant's motion for summary judgment on plaintiff's Eighth Amendment claim against Defendant Herzog;

- GRANT defendants' motion for summary judgment on plaintiff's equal protection clause claim against Defendant Boe;

- DENY in part (as to claims for declaratory and injunctive relief), and GRANT in part (as to claims for damages), defendants' motion for summary judgment on plaintiff's First Amendment claim against Defendant Boe; and

- DENY in part (as to claims for declaratory and injunctive relief), and GRANT in part (as to claims for damages), defendants' motion for summary judgment on plaintiff's Fourteenth Amendment right to marry claim against Defendant Boe.

The Court should hold that Defendant Boe is entitled to qualified immunity from damages as to plaintiff's First Amendment retaliation claim and his Fourteenth Amendment right to marry claim.

Yet, the Court should hold that qualified immunity does not apply to equitable relief that plaintiff seeks, relating to his First Amendment retaliation claim and his Fourteenth Amendment right to marry claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is

1    directed to set the matter for consideration on September 30, 2022, as noted in the

2    caption.

3        Dated this 15th day of September, 2022.

4

5

6        Theresa L. Fricke
         United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORT AND RECOMMENDATION - 22